PERRY v. INSURANCE ASSOCIATION.

(Filed October 24, 1905).

*Corporations—Contracts of Mutual Insurance Companies— Officers—Rights of Policy Holders—Dissolution—Personal Liability of Officers—Remedy.*

1.  The law will not permit persons to hold themselves out as officers of a corporation, make contracts, assume liabilities, receive money, etc., and avoid all responsibility by simply denying the existence of the corporation, or the agency through which it professes to act.

2.  The courts seek to sustain and enforce contracts of mutual insurance companies, by looking to the substance and intention, rather than by adopting a technical or strained construction.

3.  Neither officers nor members of corporations can evade their plain duty to those with whom contracts are made, by dissolving the organization and leaving creditors unprovided for.

4.  Where the members of mutual insurance companies have enjoyed the protection which membership affords, they cannot, after a loss has been sustained, withdraw and refuse to pay their portion of the loss.

5.  The right of each policy holder in the defendant company is to have an assessment made to pay his loss, and he has no claim upon an amount paid to another policy holder.

6. The plaintiff cannot hold the officers of the defendant association personally liable for his judgment against it, because they procured its dissolution and the formation of a new company.

7. The plaintiff may, by motion in the cause in which he obtained judgment, have an order directed to the defendant corporation to have the assessment made according to its charter and by-laws, and the court has power to enforce its performance by appropriate orders.

ACTION by T. J. Perry against Farmer's Mutual Fire Association of North Carolina and others, heard by *Judge G. W. Ward* and a jury, at the February Term, 1905, of the Superior Court of UNION County.

Plaintiff recovered judgment in the Superior Court of Union County against the Farmer's Mutual Fire Insurance Association upon a policy issued by said corporation, "by and through the Union and Stanly Branch." The judgment was affirmed by this court at the February Term, 1903, (132 N. C. 283). It appearing from the record in that cause that the Union and Stanly Branch had ceased to exist and that its liabilities had been assumed by the Union Branch, judgment was directed to be entered that the amount be paid by assessments upon the members of that Branch, which was done at the next succeeding term of the court. The judgment not having been paid, plaintiff instituted the present action against the corporation, the Farmer's Mutual Fire Insurance Association, and W. H. Phifer and James McNeely. In the complaint it is alleged, in addition to the foregoing facts, that the defendant Phifer is president, and McNeely is secretary and treasurer of said Union County Branch. That by the provisions of the charter of the defendant, the terms of the policy, and the judgment thereon, it was the duty of the president of the Union County Branch of said corporation to levy an assessment upon all the members of said branch, sufficient to pay the said judgment. That demand was made therefor and refused. That since

the rendition of said judgment, the said branch, through its officers, have paid on account of claims against it, an amount more than sufficient to pay the same. That more than one hundred dollars have been paid to the defendants, the president and the secretary and treasurer, on account of salaries and commissions, and $223 paid to B. D. Austin on a claim which had no preference over the plaintiff.

That since the rendition of said judgment the defendants, the president and secretary, with the intent and for the purpose of preventing the plaintiff from collecting his judgment, called a meeting of the members of said corporation living in Union County and composing said Union County Branch, and attempted to dissolve said branch, and to form another association, of which the defendant, W. H. Phifer, is president, and James McNeely is secretary and treasurer. That the holders of the policies in the Union County Branch were permitted to surrender their policies therein and take out other policies in the new corporation, without the payment of any fee, while new members were required to pay an entrance fee of fifty cents. The plaintiff asks that a mandamus issue commanding the defendant, W. H. Phifer, to levy an assessment sufficient to pay his judgment, and for a personal judgment against the defendant Phifer and McNeely. The defendant corporation filed no answer. The defendants, Phifer and McNeely, joined in an answer in which they say that there is a misjoinder of causes of action. They deny that there was ever organized any such branch of the defendant corporation as the Union County Branch. That if there was ever such a branch, it was not sued by the plaintiff, nor was any judgment ever recovered by plaintiff against such branch. Nor was the defendant corporation ever sued on account of any liability of such branch. They deny that any demand was made on the Union County Branch to levy an assessment to pay plaintiff's judgment, for the reason that there was never any such branch upon which to make a demand. They

admit the payment of the amounts as alleged, but deny that plaintiff had any claim or lien thereon. They aver that in some litigation pending in the Superior Court of Union County it was adjudged that the Union and Stanly County Branch had ceased to exist, and no such branch as the Union County Branch had been organized. That thereupon a new corporation was chartered and organized under the corporate name of "The Farmer's Mutual Fire Insurance Company of Union County." That said corporation had no connection with the defendant corporation or any of its branches, and is not successor thereto. They deny that they have ever attempted to defeat the payment of plaintiff's judgment. At the close of the evidence plaintiff withdrew his demand for a mandamus against the Farmer's Mutual Fire Insurance Association of North Carolina; defendants Phifer and Mc-Neely moved for a judgment of nonsuit, which was allowed; plaintiff excepted and appealed.

*Adams, Jerome & Armfield* for the plaintiff.
*Redwine & Stack* for the defendant, McNeely.

CONNOR, J., after stating the case: Several interesting questions in regard to the right of the plaintiff to enforce the payment of his judgment by mandamus directed to the defendant corporation are eliminated by his course in withdrawing any demand therefor. When the appeal in the original action was before us, it appeared that the Union and Stanly County Branch, through which the policy was issued, had separated, and that the Union County Branch had assumed the liabilities of the original branch. We are not sure that we understand what is meant by the allegation in the answer that there was never any Union County Branch of the defendant corporation. We would be unwilling to think that the officers of the defendant corporation would issue to its members a policy of insurance for which no one, either individ-

ually or corporately, was liable. If so improbable a thing was done, the persons issuing the policy and receiving plaintiff's money upon assessments, would be liable for damages in another form of action. The record shows that while plaintiff's policy was in force, and after the division of the branch, assessments were levied upon and paid by the plaintiff to meet losses sustained "since the division of the Union and Stanly County Branch." The record contains several notices to plaintiff, issuing from the "Office of W. H. Phifer, President Union County Branch of the Farmer's Mutual Fire Insurance Association of North Carolina," signed by "James McNeely, Secretary and Treasurer," and marked "paid" by him. We presume that notwithstanding this testimony which causes us, as it is well calculated to cause others, to suppose that some one was responsible upon contracts made and for money paid pursuant to those notices, there is some legal reason why the Union County Branch was at all times a myth, with capacity to take in, but none to pay out money. After a second careful examination of the charter of this corporation, we are not sufficiently astute to perceive why some one, either corporate or natural, is not responsible to the plaintiff upon his contract, or for damages for inducing him to enter into it. The loss was adjusted by the duly appointed officers. His money was received both before and after the fire, and a jury have found every controverted fact in his favor. While it must be conceded that the organization of the defendant corporation is somewhat peculiar, we have discovered nothing in the record to cause us to change our opinion that the "Union Branch is liable to the plaintiff, and if the defendant fails or refuses to make the assessment, the plaintiff would be entitled to a mandamus compelling it to do so. The Union Branch is not a corporation, and is not a party to this action. The remedy must be worked out through the defendant corporation." *Perry v. Ins. Asso.,* 132 N. C., 283. The contract of insurance was with the de-

fendant corporation "through the Union and Stanly County Branch." The by-laws, put in evidence, provide that "it shall be the duty of the president of any branch of this association to sign all policies issued through said branch, and order all assessments after they have been properly adjusted." It cannot be that the law will permit persons to hold themselves out as officers of a corporation, make contracts, assume liabilities, receive money, etc., and avoid all responsibility by simply denying the existence of the corporation or the agency through which it professes to act. It is evident that the defendant corporation was organized for the purpose of affording persons residing in the county, an apportunity to insure their property at a low rate fixed by actual losses and small amount for expenses. It was not contemplated that the corporation should have any capital stock or surplus fund. The security of the member was to depend upon the prompt assessment upon, and payment by each member, of the amount necessary to pay the loss. The business was to be conducted by branches formed in the several counties, each branch being, in respect to its policies and losses, independent. This is all simple and plain, but the success of the plan is necessarily very largely dependent upon the good faith of the members and managers. It is well known that the parties are not experienced in the business of insurance, or the management of corporations. The courts have sought to sustain and enforce such contracts by looking to the substance and intention, rather than by adopting a technical or strained construction. Bacon's Benefit Soc., sec. 178. While it is not perfectly clear how the remedy for failure to levy and collect the assessment is to be worked out, we have no doubt that an order may be formulated which will enforce the discharge of duty imposed by the charter. Neither officers nor members of corporations can evade their plain duty to those with whom contracts are made, by dissolving the organization and leaving creditors

unprovided for. To permit this to be done would invite and encourage dishonesty and fraud. If the corporation has property, it is impressed with a trust for the benefit of creditors. If there are unpaid subscriptions to the stock, the courts enforce their collection and appropriation upon the same principle. *Foundry Co. v. Killian,* 99 N. C., 501. We do not doubt that in mutual insurance companies, amounts due upon assessments already made, or to be made to pay losses accrued, the same principle is applicable. It cannot be that where all the members have enjoyed the protection which membership affords, they can, after a loss has been sustained, withdraw and refuse to pay their portion of the loss. 21 Am. & Eng. Enc. (2nd Ed.), 277. It is well settled that when several persons participate in the irregular organization of a corporation, they cannot avoid responsibility to its creditors by showing the invalidity of the organization. *Foundry Co. v. Killian, supra.* The plaintiff, however, waives, in this action, his remedy by mandamus and seeks to hold the defendants, Phifer and McNeely, liable personally. This claim is based upon two grounds: 1. That they paid to themselves, as commissions and salary, $126, and to B. D. Austin $223. The plaintiff is confronted with the objection that he has no claim upon this fund. It does not clearly appear how or from what source it originated. The right of each policy holder is to have an assessment made to pay his loss. It is from this source alone that he is to be paid. This is apparent from an examination of the by-laws, and the notices sent to each member, set out in the record. It therefore follows that the plaintiff had no claim upon or right to the amount paid Austin. If it was improvidently paid, the officers are liable to the corporation. 2. The plaintiff's next claim is that the defendants are liable personally for that they procured the dissolution of the Union Branch and the formation of a new company. As we have seen, the defendants, Phifer and McNeely, had no power to so dissolve the Union Branch

or withdraw its members from the corporation as to affect their liability to the plaintiff. They had a right, if they saw fit, to charter and organize a new corporation, and to prescribe the terms upon which members should be admitted or policies issued. This left the legal status of the plaintiff unimpaired. We cannot perceive how any cause of action accrued to the plaintiff by the formation of the new company. It does not appear that the new company took over any assets of the Union County Branch, and it expressly refused to assume any liability for plaintiff's judgment. So far as the record shows, the members of the Union Branch of the defendant company have never refused to pay plaintiff's judgment. They have never been called upon to do so by an assessment. We are of the opinion that the judgment of nonsuit was properly ordered. While we can see much practical difficulty in enforcing the payment of an assessment when made, we can see no reason why, by motion in the original cause, the plaintiff may not have an order directed to the defendant corporation to have the assessment made pursuant to its charter and by-laws. If the officers should refuse to discharge their duty, we do not doubt that power resides in the court to enforce its performance, or to appoint a receiver with directions to make and collect the assessment. If this is not so, the maxim, that there is no wrong without a remedy, is not true.

The judgment must be

Affirmed.