D. E. McIVER, receiver, v. YOUNG HARDWARE COMPANY.

(Filed 30 April, 1907).

1. **Corporation—Sale of Entire Assets—Rights of Creditors.**—All the directors and stockholders of a corporation may not sell practically the entire assets of the corporation for their own benefit and advantage, upon a consideration moving to themselves alone, to the prejudice of the rights of its creditors.

2. **Same—Fraud in Law—Equity Follows Assets—Recovery.**—It is the duty of the directors to preserve the assets of the corporation and administer them for the benefit of the creditors; therefore, when one corporation attempts to buy practically the entire assets of another from all of the directors and stockholders, paying therefor the stock of the purchasing corporation at par, but worth less than par, and subsequently becoming worthless, and reserving for the payment of debts of the selling corporation a certain amount of said stock, the transaction is fraudulent in law as to the creditors, and void; and equity will follow the assets into the hands of other than *bona fide* creditors or purchasers for value and compel them to be applied to the satisfaction of the debts, or, if not available, their value may be recovered.

3. **Same—Bona Fide Purchaser for Value.**—A corporation purchasing almost the entire assets of another corporation, paying the individual directors and stockholders therefor, and not ascertaining and providing for the debts of the other corporation, is not an innocent purchaser for value, without notice.

4. **Same—Liability of Purchasing Corporation—Of Officers and Directors of Selling Corporation.**—A corporation purchasing from the officers and stockholders of another corporation almost its entire assets, without provision for the creditors, is, with such officers and directors, jointly and severally liable to the receiver of the defunct selling corporation for the amount necessary to pay the claims existing against it, interest and costs.

5. **Same—Amount and Extent of Recovery.**—When the selling corporation is insolvent, and its receiver is required to share ratably in the assets of the purchasing corporation, also insolvent and in a receiver's hands, he can prove against it an amount equaling the full value of the goods purchased, but not more may be recovered than will be enough to pay the amount due the creditors.

6. **Same—Liability—Charter Provisions—Officers—Torts—Statute.** The charter provisions, that "no stockholder of the corporation shall be individually liable for any debt, liability, contract, tort, omission or engagement of the corporation or any other stockholder therein," does not interfere with the just and equitable principle, also embodied in Revisal, sec. 1192, holding the stockholders who are directors liable for a joint tort or misfeasance committed by them to the prejudice of creditors.

CIVIL ACTION, heard by *Justice, J.,* at November Term, 1906, Superior Court of MOORE County.

The Sanford Hardware Company is a corporation chartered by this State in June, 1900, with an authorized capital of $4,500, of which $3,000 has been paid in, and had its place of business at Sanford, N. C. The Young Hardware Company was also chartered by this State and had its place of business at Raleigh, N. C., both having been engaged in the hardware business. The Sanford corporation became insolvent, and, in a judgment-creditor's suit against it to subject its assets to the payment of its debts and liabilities, the plaintiff, D. E. McIver, was appointed receiver, and, as such, he brings this action.

The case was tried by consent without a jury, and the Court found substantially the following facts: The plain-

tiff D. E. McIver was duly appointed, in April, 1905, receiver of the Sanford Hardware Company, with the usual powers; the defendants Bynum and Clark were the president and secretary and treasurer of the company, and they, with Terry, were its only stockholders and directors. Terry, Bynum and Clark, finding that the company was not making money, sold to the Young Hardware Company the entire stock of goods of the Sanford Hardware Company at the price of $2,000, its then value, taking in payment therefor capital stock of the former company of the par value of $2,000, which was worth at the time fifty cents on the dollar, as they then well knew, and which is now absolutely worthless. Of this stock, according to the agreement between the parties, $500 was issued directly to Terry, $500 to Bynum, and $500 to Clark. The remaining $500 was retained by the Young Hardware Company until the Sanford Hardware Company's debts should be paid, and has never been issued and delivered to the latter. It was thought, at the time, to be sufficient to pay the outstanding debts. The several defendants, after the appointment of McIver as receiver, and after the stock became worthless, tendered the stock of the Young Hardware Company, severally held by them, to the plaintiff, who declined to receive it. The debts of the Sanford Hardware Company, at the time of the transactions herein mentioned and at the present time, amount to about $620. Some of its debts, not included in the $620, have been settled by it since the transfer of its stock of merchandise. The Sanford Hardware Company retained a safe and typewriter, value not given, and some small articles, and certain book accounts now worth $10 or $15, which articles, with the stock of goods, constituted its entire assets. Creditors have reduced their claims to judgment, have issued executions, and the Sheriff has returned the same "nothing to be

found." All of the foregoing facts were known to all of the defendants at the time of the transaction. The Young Hardware Company is now insolvent and was so when this action was brought. The Sanford Hardware Company has never received from it, or from any source, any payment of money or other thing of value for the stock of goods delivered to the latter by Bynum, Clark and Terry. At the time of the said· transactions, Bynum was president of the Sanford Hardware Company and manager of the other corporation, but had no other interest in the latter until the $500 of its stock was issued to him. The negotiations and trade with the Young Hardware Company were conducted by Bynum and Clark, by and with the knowledge and consent of Terry. When the offer was made for the stock of goods by the Young Hardware Company, Bynum, Clark and Terry consulted about it and accepted in writing the proposal to buy. At the time, though, the Sanford Hardware Company was not being pressed in any way by its creditors, and had not been. The transfer of the goods was made in November, 1904, in good faith, without concealment or fraud, and Bynum, Clark and Terry received nothing in the way of benefit from the transaction except the stock of the Young Hardware Company.

The charter of the Sanford Hardware Company provides as follows:

"With the consent, in writing and pursuant to the vote of the holders of a majority of the stock issued and outstanding, the directors shall have power and authority to sell, assign, transfer or otherwise dispose of the whole property of this corporation.

"No stockholder of the said corporation shall be individually liable for any debt, liability, contract, tort, omission or engagement of the said corporation or of any other stockholder herein."

The company also had the general power to buy and sell real and personal property.

Upon, the facts thus found by it, the Court adjudged that the plaintiff is only entitled to recover from the defendants A. P. Terry, A. J. Bynum, Jr., and A. M. Clark the certificates of stock held by them and issued to them by the Young Hardware Company; that he take nothing by his suit except the said certificates of stock, and that the defendants go without day and recover of the plaintiff their costs. Plaintiff excepted and appealed.

*John W. Hinsdale* and *Seawell & McIver* for plaintiff.
*W. J. Adams, Womack, Hayes & Bynum* for defendant.

Wᴀʟᴋᴇʀ, J., after stating the case: If we should concede that the transaction by which the transfer of the property of the Sanford Hardware Company to the Young Hardware Company was effected by Bynum, Clark and Terry was valid as a corporate act and sufficient to pass the title to the latter company, as against creditors of the former company, unless there is some other objection to the transfer, we think it is so lacking in the essential elements of a *bona fide* sale that, however regularly and formally those who were, at the time, stockholders and officers of the Sanford Hardware Company proceeded, no title to the property was ever acquired by the Young Hardware Company, so far as the creditors of the other corporation are concerned. The essence of a sale is the transfer of the property in the thing from the buyer to the seller for a price. Tiffany on Sales, pp. 1 and 2. No price has been paid to the Sanford Hardware Company, which is an entity distinct from its corporators.

It was not competent for the directors of the Sanford Hardware Company, even though they were also stockholders, to sell its property to any one for their own benefit

and advantage and to the prejudice of its creditors, or, in other words, to sell practically the entire property of the corporation upon a consideration moving to themselves. It has been held that a director, who is also a creditor of a corporation, cannot prefer himself to the other creditors in the application of its assets to the security or payment of its debts. *Hill v. Lumber Co.,* 113 N. C., 173; *Bank v. Cotton Mills,* 115 N. C., 507. The assets of a corporation are, in a certain sense, to be regarded as a trust fund, and the officers as occupying the position of fiduciaries, in respect to their duty towards creditors, charged with the preservation and proper distribution of those assets. The corporate debts must be paid before they can appropriate any part of the assets to their own use, though they may also be stockholders. The fund for the payment of dividends and for the redemption of the stock is what is left after the creditors have been satisfied. It is true that, subject to the exception already mentioned, the corporation, through its appointed officers and agents, may dispose of its assets just as an individual may deal with his property until, by reason of its insolvency, they are brought under the control of the Court, when they will be distributed among the creditors ratably and upon the principle that equality is equity, subject, however, to the recognition and enforcement of any superior equitable rights or liens acquired beforehand, and which may entitle the holders thereof to be preferred with respect to them in the administration of the fund.

It is needless to enter upon any elaborate discussion of what is known as the "trust-fund doctrine" in order to define its true nature and to fix its limitations, for it is quite sufficient, for the purpose of deciding this case, that, as a part of that important doctrine, we find it to be settled that the stockholders and officers of the corporation are

liable to it and to its creditors for any acts of malfeasance, misfeasance or nonfeasance, by which their rights are injuriously affected, and, as a consequence, for any loss arising out of their fraud or negligence. If they have served themselves, directly or indirectly, instead of serving the corporation when their interests and those of the corporation or of its creditors conflict, they must answer for any loss resulting from their faithlessness and cupidity. While there is no direct and express trust attached to the corporate property for the benefit of its creditors, so that its assets cannot be conveyed by it or acquired by another except they be subject, in the hands of the purchaser, to the burden of a trust or lien, and therefore they can properly be called a trust fund only "by way of analogy or metaphor"; and while, as between itself and its creditors, the corporation may be regarded as simply a debtor, still, as between its creditors and its stockholders, its assets are considered in equity, as a fund for the payment of debts and cannot be diverted from that purpose for the benefit of the latter, no matter what the form of the transaction may be by which the scheme of diversion is consummated.

The principles we have thus generally stated are well sustained by numerous authorities. *Sawyer v. Hoag,* 17 Wall., 610; *Hollers v. Brierfield,* 150 U. S., 371; *Foundry Co. v. Killian,* 99 N. C., 501; *Clayton v. Ore Knob Co.,* 109 N. C., 385; *Hill v. Lumber Co., supra; Bank v. Cotton Mills, supra; Electric Light Co. v. Electric Light Co.,* 116 N. C., 112; *Cooper v. Security Co.,* 122 N. C., 463; *Graham v. Carr,* 130 N. C., 271; *Wood v. Dummer,* 3 Mason, 311; *Handley v. Stutz,* 139 U. S., 417. In the last cited case the subject is fully discussed and the cases bearing upon it are carefully collated. Speaking of the obligation of directors arising out of this trust relation, *Justice Davis,* for the Court,

McIver v. Hardware Co.

in *Drury v. Cross,* 7 Wall., 299, says: "It was their duty to administer the important matters committed to their charge for the mutual benefit of all parties interested, and in receiving an advantage to themselves not common to the other creditors they were guilty of a plain breach of duty." Let it be noted that this was said of directors who were also creditors—sustaining the dual relation of trustees and creditors. We find the same idea thus clearly stated in 10 Cyc., pp. 654-655: "If the capital stock should be divided, leaving any debts unpaid, every shareholder receiving his share of the capital stock would in equity be held liable *pro rata* to contribute to the discharge of such debts out of the funds in his own hand. Accordingly, when the property has been divided among the shareholders, a judgment creditor, after the return of an execution against the corporation unsatisfied, may maintain a creditor's bill against a single shareholder or against as many shareholders as he can find within the jurisdiction, to charge him or them to the extent of the assets thus diverted, and it is immaterial whether he got them by fair agreement with his associates or by an act wrongful as against them. In affording relief to creditors of corporations on this ground, courts of equity proceed on the familiar principle that whoever is found in possession of a trust fund, under circumstances which charge him with knowledge of the trust, is bound to account as trustee to those beneficially interested in such fund. Whenever shareholders have in their possession any of this trust fund they hold it *cum onere,* subject to all the equities which attach to it, and they stand in such a relation of privity with the corporation that their dealings with it will be subjected to close scrutiny where the rights of its creditors are involved."

McIver v. Hardware Co.

So in *Townsend v. Williams,* 117 N. C., 330, this Court substantially said that directors are not mere figure-heads, but occupy a fiduciary relation toward the corporation, the stockholders and the creditors; they must exercise care, attention and circumspection in the management of its affairs, and particularly in the safe-keeping and disbursement of the funds put into their custody and control, and they must see that they are appropriated as intended for the purposes of the trust. If they misappropriate them or allow others to divert them from those purposes, they must account to their *cestuis que trust* for the dereliction of duty. *Shea v. Mabry,* 1 Lea (Tenn.), 342. But more to the point is a statement of the principle of liability involved in this case by *Judge Thompson,* which seems to be peculiarly applicable to the facts as they appear in the record: "It is not necessary to say that the corporation cannot sell or in any way alien its property to the prejudice of its creditors so as to hinder, delay or defraud them in the collection of debts owing by it; and in general, whenever a conveyance is made by a corporation under such circumstances as would characterize it as a fraud upon creditors, if made by an individual, it will be set aside in equity at the suit of such creditors, or other appropriate relief will be accorded them. Hence, a sale by a corporation to another corporation, in consideration of the latter delivering a specified amount of its stock to the individual shareholders of the selling corporation, and guaranteeing the payment of the debts of the selling corporation, is *prima facie* fraudulent as to the creditors of the selling corporation; and, where the rights of a creditor have supervened, it is beyond the power of the corporation, even with the consent of its shareholders, to sell out its plant and retire from business, taking the stock of the purchasing corporation in payment therefor and issu-

ing it to one of its individual shareholders, without any agreement on his part to pay the corporate debts." 10 Cyc., 1266, 1267.

It will be observed that the transaction is said by *Judge Thompson* to be void as being, in contemplation of law, fraudulent in respect to creditors; but, whether technically fraudulent or not, the fact is that assets, which should have gone to the payment of the corporate debts and liabilities, have been unlawfully withdrawn from that purpose and applied to the benefit of the shareholders, who are not entitled to receive them, leaving the debts of the corporation unpaid. Such a conveyance of the assets is practically, and to all intents and purposes, a voluntary one, as no consideration is actually paid to the corporation which can stand as a substitute to creditors for the assets so transferred and be as available and valuable to them as the original trust fund, the place of which it has taken. A transaction that produces this result will not defeat the trust which the law imposes upon the fund, nor impair the remedy of creditors if any debts remain unpaid. *Vance v. Coal Co.,* 92 Tenn., 47; *Railroad v. Howard,* 7 Wall., 410; *Curran v. Arkansas,* 15 Howard, 527; *Fellrath v. School Association,* 66 Ill. App., 77; *Railway Co. v. Bank,* 134 U. S., 276; *Railroad v. Pettus,* 113 U. S., 124; *Mellen v. Moline Iron Works,* 131 U. S., 356.

As said by the Court in *Hurd v. Laundry Co.,* 167 N. Y., 89, "The stockholders consent (to the transfer), but the creditor objects. When he demands payment of his claim he is referred to the empty shell, which is all that is left of the live corporation whose tangible assets constituted a trust fund for the payment of his debt at the time of its creation." When he seeks to hold the parties who have thus stripped the debtor corporation of practically all its avail-

able capital, he is told that the stock of the insolvent defend-. ant, the Young Hardware Company, now, of course, worthless, is his only resort. Can the law permit this, under the circumstances, to be any adequate response to the creditor's reasonable demand for the satisfaction of his claim? We are bound by every principle of equity and fair dealing and by the uniform precedents in such cases to answer this question emphatically in the negative. When there are debts outstanding, "it becomes the duty (of the directors) of the corporation to preserve its assets and administer them for the benefit of the creditors. A court of equity will then treat the assets as a trust fund. If they have been distributed among stockholders, or gone into the hands of others than *bona fide* creditors or purchasers (for value), a court of equity will follow them and compel them to be applied to the satisfaction of the debts." *Sidell v. Railroad,* 78 Fed. Rep., 724. It was held in *Couse v. Manufacturing Co.,* 33 Atl. Rep. (N. J.), 297, that a transfer by a corporation of all its property to another corporation, in consideration of the assumption by the latter of the former's debts, and the issuance of stock of the grantee to the grantor, which is carried out by the delivery of such stock to individual stockholders of the grantor, so that they could, if they saw fit, divide it among themselves instead of applying it to the payment of debts, is *prima facie.* fraudulent as to creditors of the grantor.

The elementary doctrine of equity is that it not only will view gifts and contracts between parties holding a confidential relation with a jealous eye, but it goes further and forbids any person, standing in a fiduciary position, from making a profit in any way at the expense of the party whose interests he is bound to protect, or sacrificing the interests of the latter in order to advance or promote his own.

Bisp. Eq. (6 Ed.), pp. 343-347. The principles we have discussed have been stated with great clearness in Womack Pr. Corp., sec. 196, and in Clark on Corp., 563. But our statute (Rev., sec. 1192) also forbids any division, withdrawal or reduction of the capital stock of a corporation except as therein provided, and charges the directors who violate its provisions with responsibility to the creditors in case of insolvency—that is, if it should become necessary for them to resort to such liability in order to collect the debts. It was so held, construing a similar statute, in *Martin v. Zullerbach,* 38 Cal., 360. The directors, Bynum, Clark and Terry, must therefore answer for the debts of their corporation to its creditors, they having wrongfully disposed of its assets, which were sufficient to pay the same. *Townsend v. Williams, supra; Solomon v. Bates,* 118 N. C., 311. This case is not like *Perry v. Insurance Association,* 139 N. C., 374, as the defendant there was a mutual insurance company, and the plaintiff could, by compelling calls and assessments, obtain satisfaction of his claim; but the Court in that case denied the right of the corporators to dissolve the company for the purpose of preventing assessments, and thereby leave the creditors without a remedy by which to recover their claims.

The Young Hardware Company can hardly claim to be a *bona fide* purchaser, for value and without notice, of the goods it received and which belonged to the other corporation. The transfer to it was not for value paid to the latter corporation (if for value at all), and it had knowledge of the breach of trust on the part of the directors, because the transaction was not in the ordinary and usual course of business, but was, at least, rather exceptional in its nature, and the very circumstances of the case imply full notice to it of all the facts necessary to charge it with liability. *Bunt-*

*ing v. Ricks,* 22 N. C., 130; *Hulbert v. Douglas,* 94 N. C.,
122.    It not only knew of the breach of trust by the
directors, but actually assisted them in its consummation,
itself receiving the fund which had been wrongfully diverted.
*Bunting v. Ricks, supra; Fellrath v. School Association,
supra.*

We cannot attach any importance to the fact that the
Young Hardware Company retained five shares of its stock
(which in fact had not even been issued at the time) until
the debts of the other company were paid.    The officers of
the Sanford Hardware Company should, of course, have
known the amount of its indebtedness, and the Young Hard-
ware Company should have made proper inquiry to ascer-
tain what it was.    The truth is that it bought the goods
with its own stock, which was then worth only one-half of
its par value, and consequently only one-half of the value
of the goods it received, and which must have been the stock
of a failing concern, as it is now worthless.    The five shares
thus retained, if they were intended to be a security for the
debts of the Sanford Hardware Company, and were not
merely withheld on condition that the debts should be first
paid before a delivery of it to the officers or stockholders
could be required, was at best but a very precarious indem-
nity to the creditors of that company.    When the Young
Hardware Company engaged in the transaction which
threatened the rights of creditors of the other company, it
took the risk of having to pay their claims in the event of
the insolvency of the latter company, and it must abide the
consequences of the hazard which has turned against it.    The
defendant company, therefore, is in no sense a *bona fide*
purchaser for value, nor has it any right or equity superior
to that of creditors of the company with whom it dealt.

It results, from what has been said, that as all of the

defendants participated in the wrongful act by which the creditors of the Sanford Hardware Company have lost the benefit of the assets upon which they relied and to which they had the right to resort for the satisfaction of their claims, and which were adequate for that purpose, they are jointly and severally liable to the receiver who represents that corporation and its creditors (*Craft v. Wilcox,* 102 Ala., 378; *Wood v. S. S. B. & F. Co.* 92 Hun., 22) for the amount necessary to pay the claims existing against it, and interest, together with proper costs and expenses; but they will not be required to pay anything beyond that amount, whatever it is. As the Young Hardware Company is insolvent, if the plaintiff is required to share ratably with its other creditors, he will be permitted to prove his claim against it up to the full value of the goods (admitted to be $2,000) and interest, provided, nevertheless, that he must not be allowed to recover from that corporation, as his *pro rata* share of its assets, more than will be sufficient to pay the amount due to creditors of the Sanford Hardware Company, with interest and all costs and expenses, as above stated. *Brown v. Bank,* 79 N. C., 244. This is the proper equitable relief to be awarded, owing to the peculiar nature of the case. Under this scheme the directors, being also stockholders, are held liable only to the amount of the *debts,* as they would themselves be entitled to the surplus of the assets over what is necessary for the payment of the same. The other defendant, who received and converted the assets, is held liable to the full value thereof, nothing else appearing; but, as the stockholders have actually accepted its stock in satisfaction of their interests, it would be inequitable to charge this defendant with more than what is sufficient to pay the debts of the Sanford Hardware Company, the stockholders being virtually estopped by their conduct from claim-

ing any more, even through the corporation or its receiver. Indeed, we do not understand that they make any such demand.

It does not appear what has become of the stock of goods transferred to the Young Hardware Company—whether it has been sold or otherwise disposed of by that company or whether that company still has possession of the stock; but we infer from the case agreed that it is not now available to the creditors of the other company, as its value is stated at $2,000, and it is therefore understood that, if the plaintiff is entitled to recover at all, the value of the goods shall stand in the place of the goods themselves. If it has been sold, the defendant corporation is, of course, liable for its value to the extent necessary for the payment of the plaintiff's claim. Wait on Fraud. Con. (3 Ed.), secs. 177, 178; *Fullerton v. Mial,* 42 How. Pr. (N. Y.), 294; *Martha v. Curley,* 90 N. Y., 372; *Valentine v. Pritchardt,* 126 N. Y., 277; *Williamson v. Williams,* 11 Lea (Tenn.), 370; Bump. Fraud. Con. (4 Ed.), sec. 628. We considered and decided a similar question in *Sprinkle v. Welborn,* 140 N. C., 163. The defendant company cannot retain the property or its avails without paying the plaintiff's claim.

No actual fraudulent intent is imputed to the parties. It is agreed that they acted in good faith, but the law will not permit this fact to defeat the creditors of the Sanford Hardware Company, for it characterizes the transfer as wrongful and in violation of their rights, without regard to the specific intent. As to them it is void in law, even though not fraudulent in fact.

In reaching our conclusion, we have paid very little regard to the special provisions of the charter of the Sanford Hardware Company, which are set out in our statement of the case. They are not at all in conflict with the general prin-

ciples of equity which have controlled our decision. The authority of the directors to sell and dispose of the corporate property is conceded, but it should be exercised in a proper way, and that is what the Legislature intended in giving the general power of disposition. The clause relating to the non-liability of a stockholder for the debt, default, or tort of any other stockholder does not forbid the application of just and equitable principles to this case; and, besides, we have held the stockholders liable as officers and, too, for a joint tort or misfeasance, and not for a separate tort committed by only one of them. But if the two provisions, or either of them, conflicted with the rule of equity we have applied and which has been embodied in our statute law (Rev., sec. 1192), they, or the one so conflicting, would be abrogated by the general clause of the Revisal, sec. 5458, which repeals all private statutes conflicting with it. *State v. Cantwell,* 142 N. C., 604.

The judgment of the Court will be set aside and a judgment entered for the plaintiff for the amount ascertained by a reference or otherwise to be due to him, under the principles herein stated, with further provision for his protection if he is required to share ratably with the creditors of the defendant company.

Error.