## THE BRUCE-MACBETH ENGINE CO. *v.* J. P. EUSTIS MANUFACTURING CO.

*Error — Jury trial — Waiver of jury — Merger of corporations — Dismissal of defendants — Statutory consolidation of corporations — Judgment entry, what constitutes — Effect of proceedings in error — Petition in error, time of filing — Liability for debts of merged companies — Election as to parties and remedy.*

1. Where two journal entries are shown by a transcript, the first being in form merely a finding in favor of the plaintiff and a fixing of the amount of damages and the second disposing of a motion for a new trial and in its terms a formal judgment entry in all respects except that it does not contain the amount to be recovered, the second entry is the judgment entry from which the filing of the petition in error must date.

2. Where the prayer of a petition is for a money judgment only as against one defendant with an alternative prayer for equitable relief against the other defendants and the defendant against whom a money judgment is sought waives a jury, such defendant cannot thereafter withdraw the waiver of a jury and insist upon a jury trial merely because the court dismisses the other defendants from the case.

3. Where the undoubted purpose of a contract between two corporations is to merge the two corporations into one, practically making as complete a merger as an actual statutory consolidation would have done, the new company is liable for the payment of a debt of one of the merged companies, although the

contract in some of its terms savors of a sale and does not comply in all respects with the requirements of a statutory consolidation.

4. A party is required to elect only when two or more inconsistent remedial rights are given by law upon the same state of facts.

5. A review by a proceeding in error of the action of a court in dismissing certain defendants from a case does not serve to delay or prevent either the continuance of the trial and a judgment against a defendant not dismissed or a review of such judgment by error proceedings.

(Decided June 28, 1917.)

ERROR: Court of Appeals for Cuyahoga county.

*Messrs. Gage, Day, Wilkin & Wachner; Messrs. Tolles, Hogsett, Ginn & Morley* and *Messrs. White, Johnson, Cannon & Neff,* for plaintiff in error.

*Messrs. Hoyt, Dustin, Kelley, McKeehan & Andrews; Mr. I. L. Evans* and *Mr. Frank O. White,* for defendant in error.

JONES, P. J.   The foundation of this action is based upon a contract dated September 11, 1905, by the terms of which the J. P. Eustis Manufacturing Company, hereinafter called plaintiff, was given the right to sell in certain territory engines manufactured by The Bruce-Meriam-Abbott Company, hereinafter called the engine company.

Under this contract plaintiff sold an engine to the Saco Brick Company, which was warranted to develop a certain guaranteed horsepower.   In January, 1907, the Saco Brick Company sued plaintiff in the courts of Massachusetts for damages by

reason of the failure of the engine sold to it to deliver the guaranteed horsepower. Notice of this suit was given to the engine company, which company assisted in securing testimony for the defense, and was advised of the progress of the case, which was hotly contested. After a considerable time judgment was obtained against the J. P. Eustis Manufacturing Company by the Saco Brick Company, and execution was issued upon said judgment in May, 1911, and plaintiff was compelled to and did pay the judgment.

In December, 1913, plaintiff brought an action against the engine company in the court of common pleas of Cuyahoga county, Ohio, to reimburse it for the damages sustained by the payment of the judgment of the Saco Brick Company. This action resulted in a judgment, on November 14, 1914, in favor of plaintiff, which was carried to the court of appeals and was there affirmed. Execution was issued upon said judgment, and October 13, 1915, a return of *nulla bona* was made thereon.

The action now before the court was then commenced in December, 1915, to recover the amount of said judgment against the engine company which it had failed to collect on execution. In this case were joined as parties defendant The Bruce-Meriam-Abbott Company, called the engine company, and its directors and stockholders, together with the personal representatives of the deceased stockholders of said company, and The Bruce-Mac-Beth Company, hereinafter called "the new company."

The case was tried on the amended petition, in which it is alleged that on or about April 29, 1909,

the engine company and The MacBeth Iron Com-
pany, called "the iron company," with the consent
and approval of the directors and stockholders of
each of said companies, entered into a contract "for
the purpose among other things of combining the
business and property of said two companies;"
that all the property, assets and effects of the two
companies were to be appraised and the values
fixed; that the engine company was to transfer and
assign to the iron company all its assets of every
kind and description whatsoever, except the lease-
hold of a small building thereon; that the engine
company was to list all of its debts and liabilities,
and that all of the debts and liabilities so listed were
to be paid by the iron company; and that the direc-
tors of the engine company guaranteed that the
liabilities of said company would not exceed the
sum so listed, and that they would hold harmless
the iron company from any liabilities in addition
to those listed.  Said agreement further provided
that the engine company should be dissolved; that
the iron company should change its name to The
Bruce-MacBeth Engine Company and if necessary
increase its capital stock; and that both companies
would list their assets and liabilities and would
issue stock to the stockholders of the engine com-
pany *pro rata* to represent the net assets of the
engine company.  The amended petition alleges
that this transfer of property was carried out and
that the new company thus obtained net assets of
said engine company to the value of $68,326; that
certificates for three hundred and forty one shares
of stock were issued to the stockholders of the
engine company to represent said amount, and the

cash balance of $126 was distributed among the stockholders in lieu of fractional shares; and that the engine company was left without any assets with which to pay its debts and particularly the debt of plaintiff. Then the following allegations were made:

"Plaintiff further alleges that by reason of the acts, transactions and proceedings of the defendants (except Walter S. Bowler), as herein set forth, said The Bruce-MacBeth Engine Company became, and is legally obligated and bound to pay all the debts, obligations and liabilities of said The Bruce-Meriam-Abbott Company, including the aforesaid claim of this plaintiff.

"If, however, it should be found by the Court that said The Bruce-MacBeth Engine Company did not become so obligated and bound to pay the aforesaid claim of this plaintiff, by reason of the premises, then plaintiff alleges that said acts, transactions and proceedings have hindered, delayed and defrauded it in the collection of its aforesaid claim against said The Bruce-Meriam-Abbott Company, and that by reason thereof, it has been prevented from collecting the same. That the aforesaid transfer and conveyance of its property was made by The Bruce-Meriam-Abbott Company with the intention of hindering, delaying and defrauding its creditors, and particularly this plaintiff, in the collection of their claims, debts, obligations and liabilities against it."

The amended petition prayed for a judgment against defendant, The Bruce MacBeth Engine Company, in the sum of $4845.12, with interest; and, in the event the court should refuse this judg-

ment, prayed in the alternative for a judgment against the other defendants, and that the transfer of the assets of said company be declared null and void and that they be taken over and administered for the benefit of the creditors of said company; and for general relief.

The case was tried to the court, and in the progress of the trial the court being called upon to construe the contract found that the terms of the contract would require the payment of the debts of the engine company by the new company, and thereupon dismissed the individual directors and stockholders and their personal representatives from the case, and allowed plaintiff to proceed as against the new company, which company was then permitted to file an amended answer in which it set up as an additional defense that the plaintiff, having elected to pursue the engine company and secure a judgment against it, was conclusively barred from proceeding against the new company. The new company at that stage filed a motion for a jury trial, which was refused by the court because a jury had been waived by the new company at the commencement of the trial.

The case proceeded, and judgment was finally rendered against the new company in the amount claimed.

Error proceedings are prosecuted here to reverse that judgment.

A preliminary question is raised by the defendant in error by a motion to dismiss the petition in error on the ground that it was not filed within the time provided by law. It is contended by defendant in error upon this motion that the judgment of the

court below was entered September 22, 1916, while plaintiff in error contends that the judgment to which error is prosecuted was entered October 19, 1916.

The journal entries shown by the transcript in this case are as follows:

"September 22, 1916. The parties by their attorneys come, waive a jury and submit this cause to the court on the pleadings and evidence; on consideration whereof the court finds for the plaintiff against the defendant, The Bruce-MacBeth Engine Company, and assesses its damages in the sum of $5426.53. To which the defendant excepts."

Motion for new trial was filed September 25, 1916, by defendant and on the same day a motion was filed by the defendant to set aside judgment. These motions were overruled, and the following entry was placed on the journal October 19, 1916:

"The motion by the defendant The Bruce-Mac-Beth Engine Company for a new trial of this case, is heard and overruled, to which the said defendant excepts. It is therefore considered that the said plaintiff recover of the said defendant its said damages and also its costs of this suit. Judgment is rendered against the said defendant for the costs herein. Record waived."

On November 2, 1916, the following entry was made upon the journal:

"The motion by the defendants for a new trial of this cause, is heard and overruled. To which ruling the defendants except. It is therefore considered that said plaintiff recover of said defendant its said damages and also its costs of this suit.

Judgment is rendered against the defendants for the costs herein."

It is apparent to the court that the entry of November 2, 1916, which is practically the same as that of October 19, was made by inadvertence and need not be further considered, as the entry of October 19 had disposed of the motion for a new trial, and in its terms is a formal judgment entry in all respects except that it does not contain the amount to be recovered, as is customary in such entries. By reference, however, to the previous entry of September 22 this amount is made certain. In its form the entry of September 22 is merely a finding in favor of the plaintiff and a fixing of the amount of damages.

Upon consideration of these entries of both September 22 and October 19, we hold that the first is not the judgment entry from which the filing of the petition in error must date, but that the entry of October 19 is such judgment entry, and that the petition in error was therefore filed within the statutory time and the motion to dismiss must be overruled.

The first and second points relied upon by plaintiff in error in seeking a reversal of the judgment below are: first, this action as it was originally instituted was one in equity and the court of common pleas had no authority or jurisdiction to transform it upon the court's own motion into an action at law against the new company alone; and, second, the new company was entitled to a trial by jury after the other defendants were dismissed from the case. We will treat these two points together.

There is no question, from the form of the petition, but that the action was primarily one for a money judgment against the new company, and, failing to secure that, in the alternative to hold the directors and stockholders of the engine company and reach its assets as a trust fund in the hands of the new company for the purpose of paying plaintiff's judgment. The action of the court in dismissing from the case the directors and stockholders of the engine company over the objection and exception of the plaintiff did not in any wise change the character of the action from one in equity to an action at law; it merely dropped out the equitable feature of the action, requiring plaintiff to stand alone upon his claim for a money judgment, which had been in the case from the commencement of the action.

By Section 11238, General Code, it is provided that there shall be but one form of action in this state, to be known as a civil action; and under Section 11305, General Code, plaintiff is required to set forth in his petition a statement of the facts constituting his cause of action, in ordinary and concise language, with a demand for the relief to which he claims to be entitled.

A distinction between actions at law and suits in equity has been abolished by the code, so far as relates to form or name, and what is called "a civil action" has been substituted. When the facts entitle the party to relief the mere form of the action is disregarded. *Chapman* v. *Lee,* 45 Ohio St., 356, 367, and *Raymond* v. *T., St. L. & K. C. Ry. Co.,* 57 Ohio St., 271.

The part of the amended petition above quoted shows that so far as this plaintiff in error, the new company, is concerned, the demand was for money only, both by the language of the allegations of the amended petition and by the form of prayer which demanded a money judgment. In this state of the pleadings, which was in no way modified by the later stages of the trial, at the commencement of the trial, counsel for the new company in answer to inquiry from the court said the case was for trial by the court and not by a jury. We regard this as a clear waiver of a jury, in accordance with the terms of Section 11379, General Code. And there was nothing in the further progress of the trial, after the court had come to construe the contract and in a measure to pass upon the liability of the new company, to authorize or permit the new company to change its position and to withdraw the waiver of a jury and to insist upon a jury trial.

The third ground of error argued by plaintiff in error is that the court erred in its conclusion that by the terms of the contract between the engine company and the new company the new company assumed and agreed to pay the claim of the plaintiff against the engine company.

It is urged that the union or merger between the engine company and the iron company was not a statutory consolidation. If it were, there is no question but that the new company would be liable for the payment of plaintiff's judgment as a debt of the engine company. *Boehmke* v. *Northern Ohio Trac. Co.,* 88 Ohio St., 156, 162.

The trial court in its opinion discusses the question of classification of this contract, and seems to

be justified in its conclusion that it must be classed as a sort of nondescript. While in some of its terms it savors of a sale, and while it does not comply in all respects with the requirements of a statutory consolidation, still its undoubted purpose was to merge the two companies into one, continuing, it is true, the corporate existence of the iron company under a new name, but practically making as complete a merger as an actual statutory consolidation would have done. If this claim had been listed, no question whatever could have been made as to the liability of the new company. The contract required that all debts, obligations and liabilities should be listed, and that when so listed the new company should become liable for them and pay them. It recognized the fact that in some manner these assets could be reached to pay any obligation which through inadvertence or mistake was not included in the list of liabilities so prepared and guaranteed to be included in the contract, and made the directors and stockholders personally liable for any claim not so listed which the new company was required to pay.

Plaintiff in error, the new company, cannot sustain its position that the transfer and conveyance of the assets of the engine company to it was a sale, carrying with it no obligations except those clearly expressed in the contract, for the reason that no consideration whatever was given by the new company to the engine company. The issue of stock in the new company, to the stockholders, was for no consideration to the company. The stockholders are not the corporation, nor do they represent it in its relation to its creditors. *Compton* v.

*Railway Co.,* 45 Ohio St., 592, 615, and *McIver* v. *Young Hardware Co.,* 144 N. C., 478, 119 Am. St., 970.

"The assets of a corporation, including unpaid subscriptions to its capital stock, constitute a trust fund for the benefit of its creditors, which cannot be disposed of by it, without consideration, or fraudulently, to the injury of such creditors." *Niles, Assignee,* v. *Olszak,* 87 Ohio St., 229.

The record clearly shows that the conduct of the parties, including their catalogues and trade literature, as well as their correspondence and dealings, showed a recognition that the two companies had actually become merged into a new company.

In the case of *Andres* v. *Morgan, Trustee,* 62 Ohio St., 236, where the members of a partnership had incorporated for the purpose of continuing the business as a corporation, and had taken capital stock to correspond with the interests theretofore held in the partnership, transferring all the partnership property to the corporation, it was held that the debts of the partnership became the debts of the corporation, which was liable therefor. The opinion of the court in this case is instructive as illustrating how the law brushes aside the fiction of the legal entity, when no real change has taken place, and refuses to construe a transaction as a purchase where such construction would operate as a fraud upon the rights of creditors.

It is suggested in the brief of counsel for plaintiff in error that there could be no liability on the part of the new company to plaintiff, because plaintiff was not a creditor of the engine company at the time its property was transferred to the new com-

pany. The obligation of the plaintiff to the Saco Brick Company arose at the time of the sale of the engine to it, and the obligation of the engine company arose at the same time by reason of its contract with plaintiff. *Boies* v. *Johnson,* 1 C. C., N. S., 451; *Jones* v. *Leeds,* 10 Ohio Dec., 173, and *Herrick* v. *Wardwell,* 58 Ohio St., 294, 309.

The fourth point claimed by plaintiff in error is that plaintiff made a conclusive election to hold the engine company alone for its debts, by proceeding against it, and that the action against the new company was therefore barred.

The party is required to elect only when two or more inconsistent remedial rights are given by the law upon the same state of facts. In *Becker* v. *Walworth,* 45 Ohio St., 169, the court, at page 173, used the following language:

"It may be said, as a deduction from the authorities on the subject, that an election is the making of a choice between two or more benefits or rights which estops the party from afterwards denying that an election has been made, and from demanding some benefit or right other than the one chosen. Except in cases where his conduct has been such as to mislead another party to his prejudice, the party having a right to elect must have proceeded upon the idea that he was bound to elect; he must have had knowledge of his obligation to elect as matter of law; there must have been a *purpose* to elect, and an *actual* election. And where the election is as to one of two or more remedies, in order to make a selection of one a bar to a pursuit of the other, it must appear that they are inconsistent, and that the one last sought is not merely cumulative."

There is no claim whatever in this case that the new company has been misled to its prejudice by the conduct of plaintiff, which seems to have been the basis of the decision in *Bohanan* v. *Pope,* 42 Me., 93, relied upon by plaintiff in error.

An election may be either as to the parties or as to the remedy. There can be no claim in this case that any election of parties has been had to the prejudice of the new company. Possibly such a question might have arisen as between the engine company and the plaintiff, the Saco Brick Company having an election as to which it might pursue — one being principal and the other agent —but that certainly does not obtain as between plaintiff and the new company.

Plaintiff in error urges that it may claim a benefit because of an election as to remedy, in that the plaintiff undertook to reach the assets of the engine company for the purpose of securing satisfaction of its judgment. Clearly such claim cannot be made where, as in this case, the parties were brought into one suit and the prayer was in the alternative, and the court granting relief by way of money judgment dismissed out the parties by means of whom it was undertaken to reach the assets.

But it is useless here to discuss further the question of election, as the trial judge has gone fully into that question in the very able opinion rendered in this case, which meets with the approval of this court, and to which it is not necessary to make any addition.

As a fifth ground of error plaintiff in error challenges the jurisdiction of this court in this proceed-

ing in error, because plaintiff has seen fit by petition in error to undertake a review of the action of the trial court in dismissing the stockholders and directors.

So far as that proceeding in error is concerned, which is found as case No. 1515 on the dockets of this court, it was a final judgment, and it was clearly within the right of plaintiff in error to obtain a review of the action of the court in that matter, and so far as any claims plaintiff might have against the stockholders and directors are concerned it was necessary to proceed without allowing lapse of time to prevent a review of that portion of its case; but such review could not in any way delay or prevent the continuance of the trial and a judgment against the new company. And the pendency of the error proceedings does not in any way interfere with the jurisdiction of this court in this case.

The judgment of the court below is therefore affirmed.

*Judgment affirmed,*

GORMAN and HAMILTON, JJ., concur

Judges of the First Appellate District, sitting in place of Judges GRANT, CARPENTER and LIEGHLEY, of the Eighth Appellate District.