It was then charged that in the progress of the above suit, the plaintiff distrusting the solvency of R. H. Helme, an agreement had been made between them whereby it was settled that the latter should take an assignment of certain debts due to the copartnership in satisfaction of the above sum of $6,473.76 due him, and among others, of a debt due the copartnership by Stevens, one of the partners, amounting to $1,800; that the amount of the property so assigned, and certain property of the partnership, should be sequestered, and the amount of the debts when collected, and the proceeds of the property when sold, should be paid into the office of the master, "and by him immediately paid to the satisfaction of said executions, as so much advanced and paid by the said Robert H. Helme," and that this agreement was incorporated into an interlocutory order made in the cause.
The bill then alleged that the plaintiff's intestate was bound as surety for R. H. Helme to the State Bank, in an individual debt, for the sum of $5,819, upon which there was also a judgment at the time of making the above recited agreement, and execution was thereon levied upon the real and personal property of R. H. Helme.
The bill then charged that the two banks had refused to receive satisfaction of the above-mentioned debts, due them by the copartnership, from the fund thus created, but had elected to enforce satisfaction out of the separate and private property of R. H. Helme, and out of the assets in the plaintiff's hands; and that the amount thereof had (139) been discharged by an execution sale of the assets in the hands of the plaintiff, and of the visible property of R. H. Helme, in the proportions for which they were respectively liable, viz., one-half by each. But that in consequence of the satisfaction of R. H. Helme's portion of the copartnership debts, from his visible property, and from the fact that the executions thereon had a priority over that upon the individual debt of R. H. Helme for $5,819, above mentioned, the plaintiff had been forced to pay, as surety for the last mentioned debt, the sum of $4,877, and he insisted that had the banks elected to receive satisfaction for the debts due by copartnership , pro tanto, from the fund created by the agreement and the decree above set forth, that the visible property of R. H. Helme, aided by the fund thus created, would have been amply sufficient to indemnify the plaintiff against loss by reason of the above stated suretyship of his intestate.
The plaintiff insisted that he had a right to the use of the fund created by his agreement with R. H. Helme to indemnify him against the loss he had sustained as surety, and charged that Helme, instead of assigning it to him, had assigned it to the defendants to secure a debt which he owed them; and that the defendants had full notice of the equity which the plaintiff had to the property thus assigned them. *Page 91 
The prayer of the bill was that the defendants might be decreed to be trustees of the property assigned them for the plaintiff, and directed to account with him for the sum which they had received under their assignment.
The State Bank and R. H. Helme were also made defendants; but no decree was prayed against them, the plaintiff only praying permission to use the name of the president and directors of the State Bank in collecting the fund created by the decree.
A demurrer for want of equity was filed by Washington (140)Thompson.
The cause was argued at June Term, 1827, and retained under advisement until the present term.
This certainly was once a case proper for a subrogation; two creditors, two funds — both funds accessible to the preferable creditor, and one only accessible to the other. And had an application been made at any time during this state of things, I think that there cannot be a doubt but that the creditor disappointed of his only fund, by the creditor who had the choice of two, might take the rejected fund as his means of satisfaction in lieu of the one thus taken from him, upon a principle of natural equity, that he who in the exercise of his own just rights injures another is bound to make satisfaction, if he can do it without loss to himself. But the application should have been made during the time that the power of the bank over the fund (149) created by the decree existed, as all that the plaintiff can ask for is to be subrogated to rights which they had when the bill was filed. No principle of equity recognized in this Court was violated by the bank in resorting to the fund most convenient, in their estimation, for the satisfaction of their debt; and on this point they were the sole judges. It is sufficient if the object was to secure themselves, and not to injure another. This case is also somewhat weakened from the circumstance that the property was not withdrawn from the operation of the plaintiff's execution by means of the sequestration; but was, from its nature, never subject to it, being debts and choses in action. There was nothing, therefore, personal in the equity which the plaintiff had; it consisted simply in this, to have from the bank an assignment of this sequestered fund, upon its being ascertained that the bank did not want it. But the bank lost all its power over the fund when their debt was satisfied, and Helme was then remitted to his original rights, and most certainly, I think, had full power to transfer it to any one, bona fide. This it seems he has *Page 92 
done to the defendants Washington and Thompson. If it is argued that the bank could not know whether they would want the fund until it was ascertained whether the other property of Helme would pay their debt, and therefore such application to them would be premature, it is answered that they might be required to make a provisional assignment. As to the equity against the defendants Washington and Thompson, the plaintiff has none. They are purchasers or encumbrancers for value, and in that respect equal at least in equity to a creditor, and have by the transfer acquired a specific equity to hold the property. As to the ground of subrogation on the score of the plaintiff's having paid (150) the debt to the bank as the surety of Helme, he can on that ground only obtain the securities and facilities which the bank had, in securing and collecting the debt thus paid by the surety, and not those which the bank had against the debtor or any other person or fund for securing and paying another debt.