Ruffin, Chief Justice,
 

 after stating the case as above, proceeded as follows: Several matters are quite evident in this case, which, we think, are sufficient to authorize the
 
 *133
 
 relief of the plaintiffs. The debt which is the subject of the controversy, justly and equitably belongs to the parties to the'suit in the County Court. The security for it was taken under the directions of the Court, by an officer of that Court, and the money was tó be collected by another officer of the Court, for the benefit of those parties. This lattér person, instead of faithfully preserving the security thus entrusted to him officially, disposed of it for his own purposes. Now if Mr. Ricks admitted himself to have been aware that Mr. Whitfield was employing for his own use, that which had been confided to him for the use of others, it would be but enforcing a principle of common honesty to hold, that ■in discounting the note with that knowledge, and applying the proceeds as was done, he'made himself accessory to, and responsible for, the breach of trust; he being one of the instruments in effecting it, and a partaker in the profit of it. Mr. Ricks could not hold what he knew his assignor could not in conscience convey to him.
 

 But it is said that Ricks had not such knowledge, and did not intend a wrong to any one, but was himself deceived by statements and appearances that removed and were sufficient to remove from his mind every suspicion of an improper disposition of the nole. If this were true, the owners of the note would have no cause of complaint against him,. but have to submit to his gain by their loss. But it cannot be yielded, that the circumstances were not sufficient to excite suspicion, or that thei’e were any that could properly allay all suspicion.
 

 The circumstances, on which the argument of good faith is based in his answer, are that the note was made payable to Melton or order; that it was endorsed by Melton to Whitfield, as in ordinary transactions, so that the legal title was in Whitfield ; and that Whitfield moreover represented himself really to be the owner.
 

 It is first to be remarked in respect to the form of the instrument or of its transfer, that it is not at all material to the present inquiry, except so far as it involves a presump, tion of the knowledge or ignorance of the continuing interest of the persons for whose benefit the note was taken. No , doubt, to an entire stranger to the previous part of the
 
 *134
 
 transaction, the note, when taken by Ricks, would have presented the appearance of belonging wholly to Whitfield, an.d to have always belonged to him or Melton, exclusive of an interest in any other person. But those appearances would have deluded only a stranger. One acquainted with the origin of the note would know that other persons besides Melton and Whitfield had been interested in the note, notwithstanding the inference to the contrary from the mere form of the paper; and therefore might — nay must— reasonably conclude that interest continued, as there was nothing from them to extinguish it. This last is Mr. Ricks’s situation instead of being that of the stranger.
 

 That he fully knew that Whitfield had cajoled Melton out of his endorsement, or that he may not have been lulled by that endorsement into false security, or that he was actually cognizant of Whitfield’s dishonest misapplication of the note, cannot be insisted on under the circumstances in which the cause is heard; The answer positively denies that Ricks actually knew or believed that the note did not belong to Whitfield, and affirms his belief at the time from Melton’s assignment and Whitfield’s declarations that it did belong to the latter.
 

 But much less than actual or particular knowledge in detail is sufficient to convert a person into a trustee, who co-operates with a dishonest trustee in an act amounting to a breach of trust. Constructive notice, from the possession of the means of knowledge, will have that effect, although the party were actually ignorant — but ignorant merely because he would not investigate. It is well settled, that if any thing appears to a party calculated to attract attention or stimulate inquiry, the person is affected with knowledge of all that the inquiry would have disclosed. This principle we deem decisive of the present case.
 

 To say nothing of Whitfield’s known necessities and suspected insolvency, or his previous official defalcations or the false appearance attempted by antedating the endorsement— and admit that Ricks believed his representation, singular as in some respects it was ; yet there are other facts undeniably known to Ricks, which should have prevented such confidence in Whitfield, and which suggested inquiries in
 
 *135
 
 quarters where the whole truth must have been readily learned.
 

 Ricks knew why the sale was made ; by what authority ; and for whose benefit; and he knew that this was the note taken at that sale. From the nature of the sale, he must have known that Melton’s duty was to report the transaction to the Court and to dispose of the note according to the order of the Court, and not without such order, or the directions at the least, of the persons entitled to the money. Yet to not one of those sources did he apply for information, notwithstanding explanation was so obviously called for. He insists that he believed Whitfield; and especially that he relied on the confirmation which Melton’s assignment would naturally create. It is clear, that Ricks did not at first believe Whitfield; for he required Melton's endorsement. When obtained, the answer seizes on it as constituting a forma] legal authority in Whitfield to transfer ,-the note, inasmuch as the note was payable to Melton or order, without a reference to his character in making the sale. But, at the same time, this defendant is obliged to admit that he was aware of- that character and of the interest in the sale, of the parties to the suit by petition. Then Melton’s endorsement could satisfy Ricks of nothing in respect of his aut hority from the Court or those parties, to change the security for the debt by giving to Whitfield this note for his own. At most, that endorsement only carried the matter one step further back, anti induced the suspicion that Melton, through design or ignorance, was committing a breach of duty. One who knew that, in its inception, the note belonged beneficially to the parties to the suit, could not justifiably rely on any endorsement, not even of him to whom the note was payable, without first ascertaining that those beneficial owners had parted from their interest, or that they or the Court had given authority to the person thus disposing of what — at least at one time — was not in fact his, although it so appeared to be. Neither the Court nor those parties'ever did any thing of the sort in this case ; and so Ricks would have learned, had he applied to the record, or inquired of Melton, or either of the other parties.
 

 Had Mrs. Lewis, then, and the other persons who have
 
 *136
 
 the same title, claimed by their bill the debt as theirs in this Court, there is no doubt that Ricks must have been consid-erec* as aff°cte<i with notice of the rights of those parties ; and that the Court must have declared, that as the note was held by Melton and Whitfield, so it is held by Ricks also for their benefit.
 

 Ought not the same relief to be given at the instance of the present plaintiffs, the sureties of an insolvent principal? We think so, upon the principle on which sureties ordinai’ily receive the assistance of this Court. First, the creditors ought not to raise the money from the sureties, when the creditors can follow their original security specifically and effectually: and secondly, the sureties are entitled to the benefit of all the remedies and securities that were in the power of the creditors.
 

 The creditors may certainly look to the Clerk’s sureties, if the note itself cannot be recovered, or its proceeds subjected in the hands of the holder. We think it but reasonable too, that the creditors should have proceeded, in the first instance, on the Clerk’s bond. That was a plain and direct remedy, and as stated in their answers, it was uncertain whether notice of their rights, either actual or constructive, would be confessed by Ricks or otherwise established. In that state of things, the sureties could not impose on the creditors the delay, risk and expense of an equity suit against Ricks. But the question is presented now in quite a different aspect. The sureties have themselves undertaken the task and expense of bringing Mr. Ricks to answer, and of establishing such knowledge by him at the time he took the note, as converts him into a trustee for the creditors, if they will look to him as such. They ought to do so and spare the sureties, because Ricks participated in the wrongful attempt to deprive them of their security, and thereby rendered himself directly answerable to them. Besides, the fund, as the property of the claimants, ought to be talu n, since it can be had, instead of leaving it in the hands of a person, who, in the view of the Court, did not come by it in good faith, for the sake of making the present plaintiffs responsible for it as lost.
 

 But it is said the equity of the plaintiffs is repelled by the
 
 *137
 
 nature of their obligation, as they oontr acted to be responsible for the frauds and other mal-feasances of the Clerk, as well as for his non-feasances. Admit it; but to whom are they to be responsible ? To those who can complain of a violation of official duty, as an injury to them ; but not to one who culpably aided or concurred in such breach of duty. The defendant Ricks cannot therefore urge this objection. The other class of defendants, the creditors, ought not; because they have no interest either way ; as they are to be paid at all events, and they cannot but see that as between themselves and each of the other parties, that is to say, the plaintiffs in this Court and Mr. Ricks, the former are innocent in this transaction, while the latter is quite the contrary. This is a sufficient reason why the creditors should take their remedy against Ricks; or if the present plaintiffs had paid the creditors, why the plaintiffs should not be reimbursed out of the fund in the hands of Ricks, upon the principle of subrogation. The answer- of Ricks further claims that he should be at least allowed to retain the sums which were applied to debts for which the plaintiffs or some of them were liable, as he says, upon other transactions.
 

 As to the portion that was applied to the bond in which Arrington and one of the plaintiffs, Bunting, were sureties, it is sufficient to say that it cannot be allowed for want of mutuality. The demand of the plaintiffs is joint, and cannot be partitioned so as to allot a share to Bunting by way of satisfying the part of the bond for which he' may be liable as between himself and his co-security, Arrington, who is not a party to this suit. The counter-demand of Mr. Ricks is in the nature of a set-off, and ought, therefore, to be between the same parties.
 

 The answer leaves us in the dark with respect to the nature of the other demand for $ 147, said to have been paid into the Clerk’s office. It does not specify by whom paid; in what suit; whether on execution or voluntarily-, or whether Ricks was the legal or equitable owner of it. In short, there are no allegations, upon which it can be seen that the plaintiffs are legally responsible for that sum. If they be, Mr. Ricks can subject them in an action on the Clerk’s bond. We do him no injustice in declining to act here on the vague statement of his answer.
 

 
 *138
 
 The result is, that the debt of Bunn and Cooper in the han<Is °f Ricks must be declared subject to the satisfaction of the demand for which the plaintiffs were sued at law, and be brought into Court, that it may be applied thereto, if the plaintiffs have not already satisfied the demand of the rela-tors in the action at law, or be applied to the reimbursement of the plaintiffs, if they have so satisfied the relators. The necessary inquiries will be made upon those points, and of the amount of the respective debts and recoveries. The defendant, Melton, must pay his own costs; and the plaintiffs must pay the costs of Mrs. Lewis and that class of defendants; but the defendant Ricks must repay to the plaintiffs the sum so to be paid by them, and also all the plaintiffs’ own costs both at law and in this Court.
 

 Per Curiam. Decree accordingly.