BANK OF COMMERCE & TRUSTS et al. v. McARTHUR et al.

(District Court, E. D. North Carolina. September 2, 1919.)

No. 369.

1. BILLS AND NOTES ☞379—ACCOMMODATION INDORSEMENT; DEFENSE AGAINST BONA FIDE PURCHASER.

One who allows the use of his name as payee of a note and becomes an indorser of the same is liable to subsequent bona fide holder for value, even though he was not the real payee.

2. BILLS AND NOTES ☞306, 371—ACCOMMODATION NOTE; LIABILITY TO SUBSEQUENT INDORSER WITHOUT NOTICE.

One who signed a note as only an accommodation maker is liable to a payee who indorsed the note without knowledge that the maker was only an accommodation party, and such payee and indorser, having paid the note or discharged judgment thereon, may recover the amount from the accommodation maker or have the judgment assigned to a third person and enforce it by way of exoneration.

3. SET-OFF AND COUNTERCLAIM ☞60—FAILURE TO URGE; EFFECT.

Although a defendant may in an action against him set up a counterclaim, his failure to do so does not prevent him from resorting to a separate action.

4. SUBROGATION ☞7(7)—RIGHT OF SURETY; PAYMENT OF JUDGMENT.

Though the payee and indorser of a note, who was sued with the maker, did not allege, in accordance with Revisal N. C. 1905, § 2840 et seq.,

that he was surety, so that the jury might distinguish between the principal and surety, and judgment might be satisfied out of the property of the principal, the payee is still entitled to subrogation, and if he satisfies the judgment may have it assigned to a third party, to be enforced against the property of the principal.

5. SUBROGATION ⊛⟹31(2)—PARTIES TO NOTE; RIGHTS OF INDORSER.
    Where an indorser of a note, who was sued with the maker, satisfied the judgment, he is entitled to demand as against the maker, who is the principal debtor, an assignment of the judgment for his benefit.

6. BILLS AND NOTES ⊛⟹306—INDORSERS; RIGHTS TO POSSESSION ON PAYMENT.
    An indorser on a note may pay it and demand its delivery to him, so that he can enforce it against the maker for his own benefit.

7. SUBROGATION ⊛⟹41(4)—CREDITORS OF SUBROGEE; ENFORCEMENT OF RIGHT.
    Where an indorser of a note, who was sued with the maker, did not set up the fact that he was only a surety, in accordance with Revisal N. C. 1905, § 2840 et seq., *held*, where judgment was recovered against both the indorser and the maker, creditors of the indorser may urge his right to subrogation, so that the judgment will be first enforced out of the property of the maker, or they may pay the judgment and take an assignment, for otherwise the rights of indorser's creditors might be lost.

In Equity. Suit by the Bank of Commerce and Trusts and others against Adam McArthur and others. On motion by complainants to have judgment satisfied out of the property of a defendant other than the one named. Motion granted.

J. Crawford Biggs, of Raleigh, N. C., for plaintiffs.

Manning & Kitchin, of Raleigh, N. C., for defendants McBride and another.

CONNOR, District Judge. The pleadings and exhibits disclose: That on or about January 2, 1913, J. Sprunt Newton was the owner of a mill plant, logging outfit, and a quantity of standing timber. Desiring to have the timber manufactured into logs, he proposed to defendants D. L. McBryde, W. N. Walker, R. H. Davis, and R. W. Herring that they form a corporation, to be known as the Garland Lumber Company. That he would sell to the corporation the mill plant and logging outfit, for which they should execute their two notes, for $10,000 each, and enter into a contract with him to manufacture the standing timber. For some reason, which does not appear, the notes were made payable to J. Sprunt Newton and Adam McArthur. It does not appear that McArthur had any interest in the mill, logging outfit, or the timber. At the time of the execution of the two notes Newton executed and delivered to D. L. McBryde an agreement reciting the foregoing facts, and in consideration of $10 promising—

"to indemnify and save harmless the said McBryde from any loss, damage, or harm which he may sustain by reason of becoming one of the incorporators of said company, and to indemnify him from any loss or damage which he may sustain by reason of any notes which he may sign or indorse by reason of becoming interested in said corporation." (Exhibit A, attached to Mr. McBryde's answer.)

, It does not appear that Adam McArthur had any notice or knowledge of the execution of this contract of indemnity. The notes were executed and delivered to J. Sprunt Newton. He and Adam McArthur

indorsed one of them for value, before maturity, and without notice of the transaction between Newton and McBryde, to the American National Bank of Wilmington, N. C. Thereafter Newton informed McBryde and the other makers of the notes that he could not use them, whereupon one of the notes was destroyed. He told them that the other note would be produced, or had been destroyed. Thereafter the American National Bank recovered judgment on said note of $10,000 against D. L. McBryde, Robert Davis, W. M. Walker, and R. W. Herring, which was docketed in Cumberland county on September 15, 1913. At the April term, 1914, of said court, the American National Bank recovered judgment on said note against Adam McArthur, which was docketed in Cumberland County April 27, 1914. A payment of about $2,500 has been made upon the judgment, which was, since filing the bill herein, assigned to, and is now the property of the Citizens' National Bank of Durham.

At the time Newton stated to McBryde and the other makers of the two notes that he could not use them, they executed three notes for $5,000 each payable to said Newton. These notes were negotiated to the Citizens' National Bank of Durham. At August term, 1913, of the Superior court of Durham county, said bank recovered judgments against the makers of, and indorsers on, said notes, which have been docketed in the counties of Durham, Harnett, and Cumberland, subsequent to the docketing of the judgment recovered by the American National Bank.

Plaintiff Bank of Commerce & Trusts, at the February term, 1914, of this court, recovered judgment against Adam McArthur for $7,082.-32, with interest and cost, which was docketed March 1, 1914, and became a lien upon his real estate in Cumberland county. At May term of said court said bank recovered judgment against said McArthur for $80,000, which was docketed in Cumberland county June 17, 1914. A payment of $2,400 was made thereon March 26, 1915.

Plaintiff Citizens' Bank of Norfolk, at the May term, 1914, of this court, recovered judgment against said Adam McArthur for the sum of $25,540.39, with interest and cost, which was duly docketed and became a lien on his real estate in Cumberland and Harnett counties June 17, 1914. No part of this judgment has been paid.

At the April term, 1914, of the superior court of Cumberland county, the Fourth National Bank of Fayetteville recovered judgment against defendant Adam McArthur for the sum of $6,000, with interest and cost. Said judgment was docketed April 27, 1914, and constitutes a lien on the real estate of said McArthur, situate in Cumberland and Harnett counties.

It will be observed that the judgment of the American National Bank against D. L. McBryde, Davis, Walker, and Herring on the note for $10,000 was docketed in Harnett and Cumberland counties September 17, 1913, and constitutes a lien as of that date on the lands of McBryde. It was docketed against defendant Adam McArthur April 27, 1914, cotemporaneously with the judgment for $6,000 recovered against him by the Fourth National Bank.

It is admitted that Adam McArthur is insolvent and that the fore-

going and other judgments for amounts in excess of the value of his real estate are docketed and constitute liens on his real estate. *It is* also admitted that Walker, Davis, and Herring are insolvent.

Plaintiffs, on June 11, 1915, filed this bill against defendants, alleging the rendition of the several judgments against McBryde, McArthur, and others, with the dates of docketing same. They also set out several mortgages and deeds in trust executed by McArthur, with the dates of the liens on his real and personal property. They further allege that, by reason of the complicated condition created by the several liens attaching to the real estate of McArthur, a sale of it would result in a sacrifice of said property, as persons would be deterred from bidding, being unable to ascertain the amount and priority of the liens legally or equitably chargeable upon the several lots or points of said property.

Plaintiffs pray that the liens, priorities, and amounts thereof be ascertained and decreed, and that the property of McArthur be sold free from such liens, by commissioners appointed by and under the direction of the court. Among other prayers for specific relief, plaintiffs ask that defendant Citizens' National Bank of Durham be decreed to enforce the collection of the judgment for $10,000 from the property of D. L. McBryde, or if, for any reason, this be inequitable, that the equities of plaintiffs in this regard be decreed and enforced. The Citizens' National Bank of Durham has been made party defendant in this suit and filed her answer.

None of the defendants, other than D. L. McBryde and the Citizens' National Bank of Durham, filed answers to the bill. Pursuant to interlocutory decrees, all of the lands of Adam McArthur have been sold by commissioners appointed by the court, and they have in hand the proceeds thereof in excess of the judgment recovered by the American National Bank, but less than the judgments recovered by plaintiffs subsequent thereto, subject to the orders of the court.

The only phase of the question to be dealt with at this time, and by the decree now prayed, relates to the contention of plaintiff that the Citizens' National Bank of Durham be required to collect the judgment held by it, by assignment of the American National Bank, out of the lands of defendant D. L. McBryde, for the purpose of exonerating the lands of defendant Adam McArthur. Defendant McBryde and Citizens' National Bank of Durham contest the alleged right of plaintiff to this relief.

It is admitted that defendant D. L. McBryde owns valuable real estate, of value in excess of the amount of said judgment, situate in Cumberland county, subject to liens, in the following order of priority: (1) Mortgages to the amount of approximately $10,000. (2) Judgment recovered by American National Bank for $10,000, with interest, subject to a credit of about $2,500, assigned to the Citizens' National Bank of Durham. (3) Judgments recovered by Citizens' National Bank of Durham for $15,000, with interest. Defendant McBryde insists that, as between J. Sprunt Newton and Adam McArthur and himself, while on the face of the note he appears to be a maker, in truth he was an accommodation maker.

This contention must be disposed of before proceeding to deal with the other phases of the controversy. Upon the face of the note, McBryde, together with Walker, Davis, and Herring, are makers, and therefore, as between McArthur and themselves, primarily liable for its payment. By their indorsement to the American National Bank, Newton and McArthur became liable as sureties. Did the transaction, out of which the indebtedness accrued, and the execution by Newton of the collateral contract change, or affect, the relation of the parties, or their rights and liabilities as between each other?

[1, 2] McBryde was to share in any profits made by the corporation to be formed by virtue of the contract it made with Newton for cutting the timber in proportion to the stock which he held therein. He was to render such service as he was able toward making the corporation a success for which he was to be compensated. McArthur is not a party to, nor is it alleged that he had notice or knowledge of, the transaction. It appears from the transcript of the record in the action by the American National Bank on the note that McArthur denied having had any connection with or knowledge of its execution, or that he indorsed it. His denial did not avail him as judgment was rendered against him on his indorsement. In the absence of any explanation of this transaction, the court must deal with the rights and liabilities as they appear on the face of the note. By becoming a payee and thereafter an indorser, he became as to the bank liable for the debt and the judgment thereon is now a lien upon his property. McBryde is, as between McArthur and himself, one of the makers of the note and his property must respond to the demands upon it as such. If, upon the facts, as they appear upon the pleadings, McArthur had paid the note or discharged the judgment, he would have either an action at law against McBryde to recover the amount or a right to have the judgment assigned to a third party and enforced against McBryde's property by way of exoneration. Davison v. Gregory, 132 N. C. 389, 43 S. E. 916; Pittinger, Ex parte, 142 N. C. 85, 54 S. E. 845. Numerous cases are to be found in the reports sustaining and illustrating this principle.

[3, 4] McBryde's counsel say that whatever right McArthur may have had to call upon the court to subject McBryde's property primarily to the discharge of the debt was secured to him by compliance with section 2840 of the Revisal of 1905, which provides that, when sued, either of the defendants may allege that he is surety, and, if the allegation be proven, the jury in their verdict and the court in the judgment shall distinguish the principal and surety, and it shall be so indorsed on the execution issued for the collection of the judgment. By section 2841 the sheriff, when the execution comes into his hands, is directed to levy upon and sell the property of the principal before resorting to the property of the surety. It is insisted that the decisions of the Supreme Court of this state sustain the position that, unless the surety avail himself of the provisions of this statute before judgment is rendered, he is estopped from doing so in any subsequent stage of the action or by any other suit based upon the judgment; that his right to have the principal's property exhausted before he is called upon to

pay the debt is lost. In Stewart v. Ray, 26 N. C. 269, it is said that the statute was passed for the benefit of the surety, he may avail himself of its provisions or not as he thinks proper. If he does not, he loses the benefit intended for him, and it will be too late when an execution is about to be levied, or a sale of his property about to be made, to allege that he is not the principal, and demand of the sheriff to look to the property of him for whom he is bound. So in Banking Co. v. Duke, 121 N. C. 110, 28 S. E. 191, it was held that a judgment was not irregular and would not be set aside upon the application of the surety because it did not adjudge the relation of the parties to the note, when no such averment was made in the answer.

In these and the other cases cited by counsel it is settled that, if the surety would avail himself of the benefit of the statute, he must plead his suretyship and have the fact established by the verdict and judgment. No authority is cited to sustain the contention that by his failure to avail himself of the statutory right the surety may not, upon paying the judgment, sue the principal as for money had and received, to recover the amount, or have the judgment assigned to a third party for his benefit, or be subrogated to the securities held by the creditor. Although the statute was enacted as early as 1826, many decisions are found in our Reports sustaining the right of the surety to sue his principal at law, or to be subrogated in equity to the remedies and securities held by the creditor, in which the fact of suretyship was not pleaded nor adjudged. These remedies are independent of the statutory right to have the record show to the sheriff that by reason of suretyship of one of the defendants he is required to exhaust the property of the principal. The right secured by the statute is in no sense a defense to the action, nor does it limit or affect the right of the creditor to his judgment or the means of enforcing it. The sole office is to lay the basis for imposing upon the sheriff the duty in executing the writ of fieri facias, or venditioni exponas to sell the property of the principal before resorting to that of the surety. It is well settled that, although a defendant may, in an action against him, set up a counterclaim, his failure to do so does not prevent him from resorting to a separate action on it. Blackwell Mfg. Co. v. McElwee, 94 N. C. 425; Mauney v. Hamilton, 132 N. C. 306, 43 S. E. 903; Banking Co. v. Morehead, 126 N. C. 279, 35 S. E. 593; Robinson v. McDowell, 130 N. C. 247, 41 S. E. 287. While by section 563, Revisal, judgment may be given against one or more of several defendants and may determine the ultimate rights of the parties as between themselves, it is manifest that the defendants are not required to set up or call attention in their pleadings to rights existing between themselves; they may litigate the cause of action set up by plaintiff against them, reserving their rights as between each other.

"It has been held under this section that a judgment can be rendered in favor of a defendant against his codefendant upon matters connected with the same cause of action, and that while the rule is that a judgment against several defendants, nothing else appearing, determines none of their rights among themselves, but only the existence and legality of the plaintiff's demand, yet when the respective rights of the defendants, as between themselves, are put in issue by the pleadings, they may be adjudicated, and the

judgment is binding and conclusive upon them." Gregg v. Wilmington, 155 N. C. 18, 29, 70 S. E. 1070, 1075.

It would not seem that, by failing to set up his suretyship in the action brought by the American National Bank on the note, McArthur lost any equitable rights against McBryde to which he was entitled as surety. It is true, as held in Gatewood v. Bruns, 99 N. C. 357, 6 S. E. 635, that the surety, who has failed to set up the fact and have it found as provided by the statute, cannot enjoin the plaintiff in the judgment from proceeding to sell his land for its satisfaction. Neither McArthur nor plaintiffs may enjoin the bank from enforcing its judgment against himself until it has exhausted McBryde's property. This is not the relief asked.

[5] It is well settled that, upon payment of the judgment by McArthur, he would be entitled to demand as against McBryde, an assignment of the judgment for his benefit. This doctrine is clearly stated and recognized by the Supreme Court of this state in Barringer v. Boyden, 52 N. C. 187:

"The right of a surety to keep alive a judgment, which he has paid, by having an assignment made to a stranger for his benefit, is unquestionable. When he advances the money, he has a clear equity (if he desire it) to be subrogated to the rights of the creditor, and to use the creditor's judgment for the purpose of coercing payment against the principal. Whether money advanced in such a way be an extinguishment or a purchase seems to be a question of intention. If it be paid, and nothing be said or done to show a contrary intendment, an extinguishment will be presumed; but if an assignment be made to one not a party, so as to show a purpose to keep it alive, it is sufficient. That a party defendant furnishes the money, and that the assignment is made on a day subsequent to the advancement of the money, can make no difference, provided it was intended, at the time it was advanced, as a purchase and not as a payment."

The doctrine of equity, upon which subsequent cases have been ruled, was announced in Deering v. Earl of Winchelsea (1787) White & Tudor's L. C. Eq. 784, and Pomeroy, Eq. (3d Ed.) 1419, in which it is said:

"By the fact of payment the surety becomes an equitable assignee of all such securities, and is entitled to have them assigned and delivered up to him by the creditor, in order that he may enforce them for his own reimbursement and exoneration. If, therefore, the creditor refuses to surrender up such securities, the surety may maintain an equitable suit to compel their assignment and surrender."

[6] So it is held that an indorser on a note may pay it and demand its delivery, and if the contract has been merged into a judgment, his right is to an assignment of the judgment and enforce it for his own benefit. Eno v. Crook, 10 N. Y. 66; Freeman on Judgments, 471; Lennox v. Prout, 3 Wheat. 521, 4 L. Ed. 449. The principle is clearly stated by Prof. Langdell:

"If payment of a debt be secured by a pledge of the debtor's property, and also by the obligation of a personal surety, and the surety pay the debt, equity will compel the creditor to deliver the pledge to him and not to the debtor, though the latter has a clear legal right to receive it, the debt being paid and extinguished; i. e., equity destroys the legal right of the debtor, and converts the creditor into a trustee for the surety. This is done upon the theory that the debt is not paid by the surety, but is purchased by him, and that he is

therefore entitled to the pledge as an incident of the debt. This, however, is only a fiction—a fiction, moreover, which is contrary to law, for the payment by the surety and extinguishes the debt. Equity does this under the name of subrogation, and perhaps her best justification is that she borrowed both the name and the thing from the civil law."

If the bank had reduced the note against McBryde and the other makers to judgment, not suing McArthur, is it not clear that, when called upon to respond upon his indorsement, he would have, upon paying the note, the right to demand an assignment of the judgment; or if, after the execution and indorsement of the note, the bank had obtained collateral security, or a mortgage from the makers, the indorser could have demanded, upon tendering the amount, assignment of such security. How is such a case to be distinguished from the one disclosed by the pleadings? How does the fact that the bank has recovered judgment against the maker and indorser deprive the latter of the right to call for an assignment of the note, or the judgment into which it has been merged? Sheldon on Subrogation, 86; Nelson v. Williams, 22 N. C. 118. In Davidson v. Gregory, 132 N. C. 389, 43 S. E. 916, following the citation of many cases, it is said:

"In equity, however, when the surety, or, upon the same principle, a subsequent incumbrancer or any other person having an interest in the property affected by the liens, pays off the debt of his principal, or of the common debtor, as the case may be, for the protection of the property liable for the debt, he is subrogated to the rights of the creditor whose debt he has paid and to all securities held by him, without a formal assignment."

While the Supreme Court of this state held in many cases, prior to 1868, that the payment of a judgment by the surety extinguished it, and left him to his action at law against the principal, other courts held that equity, notwithstanding the effect of the payment at law, would, for the purpose of preserving and enforcing the equities, treat the judgment as existing, or, as was said, for the purpose of effectuating the intention of the parties, treat the judgment as alive. It may be that, under the Code system, introduced in 1868, abolishing the distinction between legal and equitable remedies, the North Carolina Courts would follow the ruling of other courts in respect to the rights of sureties for which they were bound with their principles. This view is strongly stated by Mr. Justice Walker in his dissenting opinion in Liverman v. Cahoon, 156 N. C. 189, 72 S. E. 327, 1 White & Tudor's L. C. Eq. (3d Ed.) 151.

However, this may be, McArthur is entitled, upon tendering the full amount of the judgment, with interest and cost, to demand an assignment, and that is what plaintiffs ask the court to decree.

[7] Counsel for McBryde and the Citizens' National Bank of Durham say that whatever rights McArthur may have had to be subrogated to the rights of the bank were personal, and do not vest in, nor can it be invoked by, his creditors. This contention leads to the conclusion that McArthur, against whom plaintiffs hold judgment liens junior to the judgment held by the bank against McBryde and himself, by refusing or failing to assert his right to be subrogated as against his principal, McBryde, may permit his property to be sold, and thereby

defeat the lien of plaintiffs' judgment, and that they may not protect themselves by invoking the right which he fails to assert for their protection. The correctness of this contention may be tested by assuming that subsequent to the indorsement by McArthur of the note, McBryde had executed to the American National Bank a mortgage on his land as security for the note; that the bank had thereafter recovered judgment against McBryde and McArthur on the note, and thereafter plaintiffs had recovered judgment against McArthur. Is it not clear that, for the purpose of protecting their liens, plaintiffs would be entitled to either compel the banks to foreclose the mortgage or to demand an assignment of it to themselves?

The equity to which, in the case put, the owner of the judgments against McArthur, junior to the judgment held by the bank against McBryde and McArthur, called marshaling securities, is defined by Chancellor Kent in Cheesborough v. Millard, 1 Johnson's Ch. 409:

"If a creditor has a lien on two different parcels of land, and another creditor has a lien of a younger date on one of these parcels only, and the prior creditor elects to take his whole demand out of the land on which the junior creditor has a lien, the latter will be entitled, either to have the prior creditor thrown upon the other fund, or to have the prior lien assigned to him and to receive all the aid it can afford him."

"The party liable to be affected by this election is usually protected by means of substitution. Thus, for instance, if a creditor to a bond exacts his whole demand of one of the sureties, that surety is entitled to be substituted in his place, and to a cession of his rights and securities, as if he was a purchaser against the principal debtor or the cosureties." Aldrich v. Cooper, 8 Ves. 382, 2 White & Tudor's L. C. Eq. (3d Ed.) 219; 4 Pomeroy, Eq. 1414; Hawkins v. Blake, 108 U. S. 422, 435, 2 Sup. Ct. 804, 27 L. Ed. 775; Williams v. Washington, 16 N. C. 137; Roberts v. Oldham, 63 N. C. 297; Bunting v. Ricks, 22 N. C. 130, 32 Am. Dec. 699; York v. Landis, 65 N. C. 535; Holden v. Strickland, 116 N. C. 186, 21 S. E. 684; Carter v. Jones, 40 N. C. 196, 49 Am. Dec. 425.

That the bank has secured a judgment lien against McArthur and McBryde, senior to the lien of plaintiffs' judgment, does not in principle distinguish the case from one in which it had secured a mortgage on McBryde's land. The case comes to this: McBryde is primarily, and McArthur secondarily, liable for the debt upon which the American National Bank has recovered judgment against both. McArthur is entitled to tender to the bank the amount of the judgment against McBryde and himself and demand an assignment. If the bank refuse to assign, he is entitled, in a court of equity, to have the judgment assigned, or a decree declaring the bank to hold it as his trustee, upon paying the amount. Being insolvent, and either unable or unwilling to avail himself of this right, plaintiffs, holding junior judgment liens on his property, are entitled to be substituted to his right and call on the Citizens' National Bank of Durham to either exhaust the property of McBryde or to assign its judgment to them upon payment of the amount due thereon. By pursuing this course no possible harm can come to the Citizens' National Bank of Durham, and McBryde's property will be subjected to the payment of the debt for which he is primarily liable; McArthur's property will be exonerated from this judgment and subjected to the payment of the judgment held against him

by plaintiffs. The Citizens' National Bank of Durham took an assignment of the judgment held by the American National Bank against McBryde and McArthur after the institution of this suit. It holds the judgments against McBryde junior in date of lien to the judgment in controversy. If it be permitted to collect this judgment out of the property of McArthur, the surety, it will thereby relieve the lands of the principal of the lien of the judgment and cast the burden upon the lands of the surety.

Plaintiffs' equity against McBryde and the American National Bank accrued, and attached to the judgment, before the Citizens' National Bank of Durham purchased, and it therefore took the assignment subject to such equity. The lands of McArthur have been sold by receivers appointed by the court in this case. The proceeds are held by the receivers subject to the judgment liens, according to the order of their priorities. The relief to which plaintiffs are entitled, as between McBryde, the Citizens' National Bank of Durham, and themselves, may be accomplished by a decree directing the receivers to pay from the funds in their hands to the Citizens' National Bank of Durham the amount due on the judgment against McArthur and McBryde, and take an assignment to themselves or such other person as they may designate. The same result will be reached by a decree directing the payment by the receivers of the amount of the judgment into the court upon which the Citizens' National Bank of Durham will be adjudged to hold the judgment as trustee for the receivers, subject to such further orders as may be necessary to secure relief to the parties.

A decree may be drawn ascertaining the amount due on the judgment held by the Citizens' National Bank of Durham against McBryde and McArthur, and directing the receivers to tender the amount, together with the cost, to said bank, upon the execution of an assignment of said judgments to them. The cause is retained for such other and further orders and decrees as may be in accordance with the rights of the parties and the course and practice of the court.