SPENCER OIL COMPANY, INC. v. AUSTIN WELBORN AND WIFE,
RUTH WELBORN

No. 7418DC4

(Filed 20 February 1974)

Guaranty— wife's signature on guaranty agreement — conditions and restrictions — absence of knowledge by creditor

In an action to recover upon a guaranty agreement executed by a husband and wife, plaintiff creditor is entitled to recover against the wife even if she never authorized delivery of the guaranty agreement to plaintiff and signed only on the condition that the agreement would also be signed by the husband's partner and the partner's wife where plaintiff did not have actual or constructive notice of the restrictions and conditions and extended credit to the husband in reliance upon the wife's signature on the guaranty agreement.

APPEAL by plaintiff from *Clark, District Court Judge,* 8 May 1973 Session of District Court held in GUILFORD County (High Point Division). Argued in the Court of Appeals 22 January 1974.

Plaintiff seeks to recover $10,000.00 from defendants jointly and severally upon their guaranty agreement whereby they guaranteed payment to plaintiff by defendant Welborn for rent, and merchandise and accessories sold by plaintiff to defendant Austin Welborn in the operation of a filling station located at the intersection of Highway 62 and Trinity Road.

Defendant Austin Welborn and one Buren Andrews entered into a lease agreement with plaintiff for the rental of plaintiff's filling station located at the intersection of Highway 62 and Trinity Road. Defendant Austin Welborn and Buren Andrews proposed to operate the filling station together as a partnership. The agreement with plaintiff provided for periodic payments of rent for the premises, the payment for the personal property and inventory on the premises, and the payment for merchandise and accessories thereafter sold by plaintiff to Welborn and Andrews. In addition to the agreement above referred to, plaintiff required of Welborn and Andrews that they and their wives sign a guaranty agreement guaranteeing payment in an amount not to exceed $10,000.00. Defendant Ruth Welborn discussed the guaranty agreement with plaintiff, and later she and Austin Welborn signed the guaranty. Thereafter, Austin Welborn delivered the guaranty agreement to plaintiff, and plaintiff asked Welborn to take it to Andrews and wife for their signatures. Andrews and his wife refused to sign the guaranty, because Andrews had decided not to remain in the partnership arrangement with defendant Welborn. Welborn asked plaintiff to continue the credit arrangement with him as a sole proprietorship. Plaintiff, relying upon the guaranty agreement signed by Mr. and Mrs. Welborn, agreed. Welborn operated the filling station from February, 1969, until December, 1971, under the credit arrangement with plaintiff. During part of this time, defendant Ruth Welborn worked as bookkeeper for defendant Austin Welborn. The lease and credit arrangement was terminated in December, 1971, at which time Austin Welborn was indebted to plaintiff in the sum of $14,996.20.

Defendant Ruth Welborn testified and contended that although she signed the guaranty agreement, she did not authorize anyone to deliver it. Also, she testified and contended that she signed the guaranty agreement only on condition that Mr. and Mrs. Andrews would also sign it, and they did not. Ruth Welborn never communicated these restrictions or conditions to plaintiff.

Certain pertinent findings of fact by the trial court, which are fully supported by the evidence, are set out below:

"(7) That Austin Welborn took the bond and guaranty agreement to his home where he asked Mrs. Welborn to sign it; that she signed it, placed it in a dresser drawer, and never thereafter authorized anyone to deliver it; that her signature on the document was with the understanding that Buren Andrews and his wife, Mrs. Buren Andrews, would sign the agreement; that upon their refusal to sign the agreement she at no time intended for the instrument to be delivered to the plaintiff or to anyone else; and that defendant, Ruth Welborn, never at any time informed plaintiff that she never authorized delivery of said bond and guaranty agreement to plaintiff, nor that her signature on the document was with the understanding that Buren Andrews and his wife would sign the agreement, and if they refused to sign the agreement she did not intend that the instrument be delivered to plaintiff; that all times in question, Austin Welborn and wife, Ruth Welborn were husband and wife and lived together.

"(8) That thereafter defendant, Austin Welborn, returned to plaintiff with the bond and guaranty agreement signed by himself and his wife, but not signed by Mr. and Mrs. Buren Andrews, and delivered said bond and guaranty agreement, along with the contract, to plaintiff. Mr. Spencer requested that defendant, Austin Welborn, take the instrument back and obtain the signatures of Mr. and Mrs. Andrews because defendant, Austin Welborn, was returning to his place of business and it would be more convenient for him to obtain said signatures than plaintiff.

"(9) That Buren Andrews and his wife refused to sign the agreement for the reason that Mr. Andrews anticipated going into another business, and that the bond and guaranty agreement has never since that time been seen by or been in the possession of Mr. Spencer.

"(11) That Buren Andrews left the business known as Spencer Esso Service in December of 1969, and at that time the defendant Austin Welborn talked with Mr. Spencer as to whether he would continue him with credit without Andrews being involved in the business. Mr. Spencer had seen the signature of Mrs. Austin Welborn and Austin Welborn on the bond and guaranty, and on the reliance that

the instrument was executed by her he continued to provide credit and continued the lease arrangement for the defendant Austin Welborn.

"(15) That the bond and guaranty agreement delivered by defendant, Austin Welborn, to plaintiff, provided that the obligor would be legally responsible for attorney's fees that may be incurred in the event that plaintiff was required to proceed legally against him (them) and enforcement of any claim that plaintiff is entitled to in an amount of 15 per cent of the principal balance. That the plaintiff, being the holder of said writing, on or about August 25, 1972, after maturity of the obligation, notified Mr. and Mrs. Welborn that the provisions relative to the payment of attorney's fees in addition to the outstanding balance shall be enforced and that they have five days from the mailing of such notice to pay the outstanding balance without attorney's fees, and further that if they did pay the outstanding balance in full before the expiration of such time, then the obligation to pay attorney's fees shall be void; and no court would enforce such provisions; that notwithstanding said notice the obligation was not paid and has not been paid to the present date and is still outstanding."

Based upon its findings of fact, the trial court rendered judgment against defendant Austin Welborn for the sum of $14,996.20. The trial court further concluded "that the plaintiff has shown no right to recover against the defendant, Ruth Welborn."

Plaintiff appealed.

*Stephen E. Lawing for the plaintiff.*

*Bell, Ogburn and Redding, by J. Howard Redding, for the defendants.*

BROCK, Chief Judge.

It appears to us that the findings of fact by the trial judge do not support his conclusion "that the plaintiff has shown no right to recover against the defendant, Ruth Welborn."

The trial court found from competent evidence the following facts, among others:

Oil Co. v. Welborn

"(8) That thereafter defendant, Austin Welborn, returned to plaintiff with the bond and guaranty agreement signed by himself and his wife, . . . and delivered said bond and guaranty agreement, along with the contract to plaintiff."

"(7) ' . . . [T]hat defendant, Ruth Welborn, never at any time informed plaintiff that she never authorized delivery of said bond and guaranty agreement to plaintiff, nor that her signature on the document was with the understanding that Buren Andrews and his wife would sign the agreement, and if they refused to sign the agreement, she did not intend that the instrument be delivered to plaintiff; that all times in question, Austin Welborn and wife, Ruth Welborn were husband and wife and lived together.' "

"(11) . . . Mr. Spencer had seen the signature of Mrs. Austin Welborn and Austin Welborn on the bond and guaranty, and on the reliance that the instrument was executed by her he continued to provide credit and continued the lease arrangement for the defendant Austin Welborn."

The evidence discloses that defendant Ruth Welborn was at the filling station almost every day; that defendant Austin Welborn referred plaintiff to defendant Ruth Welborn to talk about how much could be paid on his account and when it could be paid; that plaintiff at times would negotiate with defendant Ruth Welborn pertaining to the account of defendant Austin Welborn; that defendant Ruth Welborn kept the checkbooks, made deposits, kept up with the money, and knew how much and when she could make payments.

The defendant Ruth Welborn testified that she knew that in order for defendant Austin Welborn to continue doing business with plaintiff, and to continue obtaining goods, gas and supplies for his business from plaintiff, she had to sign the guaranty agreement.

The findings by the trial court that defendant Ruth Welborn never authorized delivery of the guaranty agreement to plaintiff, and signed only on condition that Mr. and Mrs. Andrews signed, do not relieve her of liability. She placed the guaranty agreement within the possession of defendant Austin Welborn, the principal debtor, with restrictions and conditions which were not communicated to the creditor. Plaintiff creditor did not have actual or constructive notice of the restrictions

---

---

and conditions, and extended credit in reliance upon the signature of defendant Ruth Welborn. " . . . [I]f the creditor did not participate therein or have knowledge thereof, recovery by him is not defeated by the fact that the debtor induced the guarantor to execute the contract by false representations or other misconduct." 38 Am. Jur. 2d, Guaranty, § 58, p. 1061.

It is questionable whether the testimony of defendant Ruth Welborn concerning restrictions and conditions on the delivery and use of the guaranty agreement was admissible over objection. The answer of defendant Ruth Welborn to the amended complaint is a general denial. It seems that where a party intends to rely upon the failure of the occurrence of a necessary condition, it should be specially pleaded in the answer. See G.S. 1A-1, Rule 9(c).

In our opinion, the evidence and the facts found require a conclusion that defendant Ruth Welborn is liable on the guaranty agreement, and that judgment should be entered against both defendants on the guaranty agreement.

The findings of fact are fully supported by the evidence and will not be disturbed.

That portion of the judgment which concludes "that the plaintiff has shown no right to recover against the defendant, Ruth Welborn" is reversed.

The complaint, as amended, specifically seeks recovery from defendants, jointly and severally, on their guaranty agreement. Although plaintiff alleged that defendants were indebted in the sum of $14,996.20 (the full amount of the account owed by defendant Austin Welborn), the guaranty agreement was for an amount not to exceed $10,000.00. Therefore, entry of judgment against Austin Welborn for more than the guaranty agreement sued upon was error. That portion of the judgment which allows recovery against defendant Austin Welborn in the sum of $14,996.20 plus interest and attorney fees is reversed.

The cause will be remanded to the District Court for entry of judgment against Austin Welborn and Ruth Welborn in accordance with the terms of the guaranty agreement.

Reversed in part and remanded.

Judges MORRIS and CARSON concur.