BRANCH BANKING AND TRUST COMPANY v. MARGARET W. CREASY

No. 7926SC360

(Filed 18 December 1979)

1. **Uniform Commercial Code § 28— guaranty—nondelivery alleged—summary judgment improper**

    In an action to recover on a guaranty executed by defendant who alleged nondelivery of the instrument, the trial court erred in entering summary judgment for plaintiff where the evidence tended to show that defendant executed the guaranty to secure a $35,000 note of her estranged husband; defendant executed the guaranty upon the instruction of her lawyer who was a partner in the same law firm as her husband; defendant left the guaranty with her lawyer, where she "figured it was in safe hands"; defendant never authorized delivery of the guaranty to plaintiff; she did not place it within the possession of her husband, the principal debtor; and her lawyer did not deliver it to plaintiff. G.S. 25-3-306(c).

2. **Uniform Commercial Code § 31— guaranty—nondelivery alleged—plaintiff not holder in due course as matter of law**

    In an action to recover on a guaranty executed by defendant where defendant raised an issue of nondelivery of the instrument, evidence was insufficient to show that plaintiff was a holder in due course of the guaranty as a matter of law where the evidence tended to show that plaintiff did not take in good faith and without notice of any defense against it on the part of any person in that plaintiff knew that defendant and her husband, the principal debtor, were separated and that the husband was in financial difficulty, his $35,000 note with plaintiff being in default; the plaintiff nevertheless gave the husband a completed guaranty form with directions to secure defendant's signature; plaintiff took no precautions to insure fair dealing with defendant; and plaintiff made no inquiries concerning the guaranty when it had readily available means to make such an investigation.

    Judge WEBB dissenting.

APPEAL by defendant from *Hasty, Judge.* Judgment entered 19 December 1978 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 29 November 1979.

Margaret W. Creasy married Thomas C. Creasy Jr. 9 June 1955 and three children were born of that marriage. On 17 October 1975, she and Creasy separated and have lived separate and apart since that date. At the time of their separation, Creasy was a licensed lawyer in North Carolina, practicing in Charlotte as a partner in the law firm of Miller, Creasy, Johnston and Allison. After the separation of defendant and Creasy, she was represented by Thomas Miller, of the law firm in which Creasy was also a partner, in the negotiation of a marital settlement with her husband.

At the time of the separation, Creasy owed plaintiff $35,000 on a note payable 30 October 1975. About 20 October 1975, Creasy requested plaintiff to renew this note and plaintiff agreed if Creasy would have his wife execute a new guaranty agreement, witnessed by someone other than Creasy. Plaintiff bank gave Creasy a completed guaranty form for this purpose, which Creasy handed to Miller, then acting as attorney for defendant, with the request that Miller have defendant sign. On 30 October 1975, Creasy's $35,000 note to plaintiff was in default, and Mr. Tyler, an officer of plaintiff, contacted Creasy several times requesting that the guaranty agreement be signed and returned to the bank.

Thereafter, on 7 November 1975, Miller took the guaranty to the home of defendant and requested that she sign it. Miller was under the impression that plaintiff held an unlimited guaranty executed by defendant and hoped to substitute the $35,000 guaranty for it. (Such a paper was introduced in evidence by plaintiff, but defendant denied ever signing it and the signature of the alleged witness on the paper is illegible.) Although defendant did not want to be responsible for any of the debts of Creasy, she signed the guaranty and gave it to her lawyer, Miller. He took the paper to his private office at the law firm and placed it in a manila folder, along with other papers relating to his negotiations with Creasy of the marital settlement. Defendant did not give him any instructions about delivering the guaranty to plaintiff but said she "figured it was in safe hands." At one point Miller testified,

"It was not my intention for Branch Branking and Trust Company to obtain the document." Later, he said, "[I]t was my intention when I left the home of Mrs. Creasy to cause it to be delivered to Branch Banking, . . .." Miller did not deliver the guaranty to plaintiff nor to anyone on behalf of plaintiff. It was in the manila folder in his private law office the last time he saw it.

Tyler testified that on 18 November 1975 the guaranty was "returned" to him and placed in the plaintiff's files on Creasy. Thereafter, Creasy's $35,000 loan was renewed by plaintiff. Creasy paid his loan obligations to plaintiff in full on 9 January 1976, and on 10 February 1976 he again borrowed $35,000 from plaintiff. This note was renewed 10 May 1976 and Creasy failed to repay it. On 13 July 1976, four days after the due date of Creasy's note, plaintiff made demand upon defendant to pay the $35,000. Defendant refused and plaintiff instituted this suit.

Plaintiff moved for summary judgment, which was allowed by Judge Hasty on 19 December 1978, and defendant appeals.

*Murchison & Guthrie, by Alton G. Murchison III, for plaintiff appellee.*

*Stack and Stephens, by Warren C. Stack, for defendant appellant.*

MARTIN (Harry C.), Judge.

We hold the entry of summary judgment for plaintiff was error. The rules and procedures governing motions for summary judgment should now be familiar learning. They are well expressed in *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971), and it would serve no useful purpose to restate them here.

Plaintiff on the hearing for summary judgment produced the guaranty, admittedly signed by defendant. Then, through the witnesses Miller and Margaret Creasy, plaintiff produced evidence showing nondelivery of the guaranty by defendant, or her attorney Miller, to plaintiff. The evidence of Miller and Mrs. Creasy raises a reasonable inference that the guaranty was stolen by Tom Creasy, signed by him and then returned by him to the bank. Miller testified at one place in the record he intended to

cause the guaranty to be delivered to the bank, but at another place he says it was not his intention for the bank to obtain the document. At any rate, he did not deliver or cause the guaranty to be delivered to the bank. Rather, he placed it with other papers relating to the controversy between defendant and her husband where it remained for eleven days. The record is unclear as to how the bank got possession of the paper; Tyler testified the executed guaranty was "returned" to him on 18 November 1975, which indicates that he had possession of the executed guaranty prior to that date.

[1]  Nondelivery of a negotiable instrument is a defense to an action upon it. N.C. Gen. Stat. 25-3-306(c). Once evidence of this defense is raised, the holder of the guaranty has the burden of proving that it is a holder in due course. *Hooker v. Hardee,* 192 N.C. 229, 134 S.E. 485 (1926); *Bank v. Furniture Co.,* 11 N.C. App. 530, 181 S.E. 2d 785, *cert. denied,* 279 N.C. 393, 183 S.E. 2d 241 (1971).

Plaintiff contends there was delivery and relies heavily upon *Oil Co. v. Welborn,* 20 N.C. App. 681, 202 S.E. 2d 618, *cert. denied,* 285 N.C. 235, 204 S.E. 2d 25 (1974). We find *Welborn* clearly distinguishable from this case. In *Welborn,* the defendant, wife of the principal debtor, after signing the guaranty placed it within the possession of the principal debtor, who then transmitted it to the creditor. The Court held she was liable on her guaranty even though she never authorized delivery of it to the creditor. Here, Mrs. Creasy left the guaranty with her lawyer, where she "figured it was in safe hands." She never authorized delivery of it to the bank, she did not place it within the possession of Creasy, the principal debtor, and her lawyer did not deliver it to the bank. From the materials before the court, we cannot hold as a matter of law that there was a delivery of the guaranty by defendant to plaintiff.

[2]  Defendant having raised an issue of nondelivery of the guaranty, we must now examine the materials before the trial court to determine if plaintiff is a holder in due course of the guaranty as a matter of law. A holder in due course takes the instrument free of the defense of nondelivery. N.C. Gen. Stat. 25-3-305(2).

To be a holder in due course, plaintiff must show it is a holder that took the guaranty (1) for value, and (2) in good faith, and (3) without notice of any defense against it on the part of any person. N.C. Gen. Stat. 25-3-302(1)(a)(b)(c). Plaintiff is a holder of the guaranty for value, having received the instrument as security for an antecedent claim against Creasy. N.C. Gen. Stat. 25-3-303(b).

Plaintiff must take the guaranty in "good faith." "Good faith" means honesty in fact in the conduct or transaction concerned. N.C. Gen. Stat. 25-1-201(19). The statute does not further define "good faith" with respect to banks; however, when referring to a merchant the added requirement of the observance of reasonable commercial standards of fair dealing in the trade is applicable. N.C. Gen. Stat. 25-2-103(1)(b). Surely, the standards of good faith of a bank should be no less than those of a merchant. Did plaintiff comply with this standard in dealing with defendant? Plaintiff knew Creasy and defendant were separated, and that Creasy was in financial difficulties (his $35,000 note with plaintiff being in default). Yet the bank gave *Creasy* a completed guaranty form with directions to secure defendant's signature. Wouldn't a reasonable commercial standard under these circumstances require the plaintiff to have Mrs. Creasy come into the bank for the purpose of signing the guaranty? Even after the guaranty was "returned" to the plaintiff, its officer, Tyler, took no precautions to ensure fair dealing to defendant. He could have easily called defendant and questioned her about her signing the guaranty. There is no evidence that Tyler was familiar with the signature of the witness Miller. Why didn't Tyler call Miller about the guaranty?

In considering fundamental questions of law such as the meaning of good faith, the old cases are often the best cases. In 1838 the Supreme Court in *Bunting v. Ricks*, 22 N.C. 130, 134 (1838), speaking through the great Chief Justice Ruffin, said:

[M]uch less than actual or particular knowledge in detail is sufficient to convert a person into a trustee who cooperates with a dishonest trustee in an act amounting to a breach of trust. Constructive notice, from the possession of the means of knowledge, will have that effect, although the party were actually ignorant—but ignorant merely because he would not investigate. It is well settled that if anything appears to a

party calculated to attract attention or stimulate inquiry, the person is affected with knowledge of all that the inquiry would have disclosed.

Applying this principle to the conduct of plaintiff, we find a substantial question of material fact arises whether the circumstances plaintiff had knowledge of were calculated to "stimulate inquiry" and require it to investigate concerning the guaranty, when it had readily available the means to make such investigation. A phone call to defendant would have disclosed that she signed the guaranty and gave it to her lawyer, not to Creasy. Inquiry of Miller would have disclosed the guaranty was surreptitiously or feloniously taken from his private office. Under the doctrine of *Bunting*, the plaintiff's position would be affected by such knowledge and plaintiff would not be a holder in due course.

This same reasoning applies with equal force to the requirement that plaintiff be without notice of any defense to the guaranty by any person, and in particular, the defendant. N.C. Gen. Stat. 25-3-302(1)(c). The plaintiff had knowledge of circumstances concerning the guaranty that raise the question whether plaintiff should have made inquiry of defendant and Miller as to its delivery. *Bunting v. Ricks, supra.* Certainly it would not be a reasonable commercial example of good faith in dealing with defendant to rely solely upon the word or actions of the principal debtor, Creasy, when verification was as close as the telephone on Tyler's desk.

The materials before the trial court were not sufficient to hold as a matter of law that plaintiff was a holder in due course of the guaranty. With this holding, it is not necessary for us to determine whether plaintiff, if it were a holder in due course, took the guaranty free of the defenses of duress in the obtaining of defendant's signature on the paper and the illegality of the transaction based upon the theft or unauthorized taking of the guaranty from attorney Miller's office. We leave these questions for further proceedings in the trial court.

The summary judgment was improvidently entered and it is

Reversed.

Judge ERWIN concurs.

Judge WEBB dissents.

Judge WEBB dissenting.

I dissent from the majority because I believe that on the evidence before the court, the bank took the guaranty in good faith. In the light most favorable to the defendant, the evidence shows the guaranty was given to defendant's husband who later returned it to the bank properly executed by defendant. The majority concludes the bank should have done something more such as call the defendant or her attorney to confirm that she meant for the guaranty to be delivered. In this I believe the majority is mistaken. We have held that when a bank delivers a loan guaranty to a customer, who later returns the guaranty properly executed, the bank cannot rely on the guaranty without further inquiry. In this I believe we have unduly restricted commercial transactions in this state.

Defendant executed the guaranty and it was witnessed by her attorney. The attorney then carried it to his office where it was available for defendant's husband to take it to the bank. If one of two innocent parties must suffer from the delivery, I do not believe it should be the bank. I believe *Oil Co. v. Welborn*, 20 N.C. App. 681, 202 S.E. 2d 618, *cert. denied*, 285 N.C. 235, 204 S.E. 2d 25 (1974) governs and I vote to affirm.